**UNITED STATES of America, Plaintiff,**

v.

**Barbara Jean WUNDER, Defendant.**

**No. 87–00091–01–CR–W–1.**

United States District Court,
W.D. Missouri, W.D.

June 26, 1987.

---

1. In the amended complaint plaintiff states "he is no less than 40 years of age but no more than 70 years of age."

James E. Brown, Office of the Federal Public Defender-Western, Kansas City, Mo., for defendant.

Mary A. Schneider, U.S. Atty., Kansas City, Mo., for plaintiff.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

JOHN W. OLIVER, Senior District Judge.

### I.

This case pends on objections filed by both the government and by the defendant to the Report and Recommendations made by the Honorable Calvin K. Hamilton, Chief Magistrate of this Court, in regard to defendant's motion to suppress evidence seized pursuant to a search warrant issued by the Honorable Charles L. Stitt, Judge of the Circuit Court of Jackson County, Missouri. Judge Hamilton recommended the following:

It is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order granting the motion to suppress evidence on the grounds that (1) the affidavit in support of the search warrant was facially invalid, and (2) the search does not fall within the good faith exception of *United States v. Leon, supra.* It is further

RECOMMENDED that, if the Court finds that the affidavit in support of the search warrant is sufficient or that the good faith exception is applicable, the Court enter an order denying the motion to suppress evidence.

Judge Hamilton's Report and Recommendation, *United States v. Wunder,* No. 87–00091 at 1 (W.D.Mo.) [hereinafter Report].

We have read and considered Judge Hamilton's report, the transcript of the evidentiary hearing, the objections of the respective parties, the responses made to those objections, and all of the cases cited and relied on by the parties in support of their respective positions. We are satisfied that Judge Hamilton correctly concluded that the affidavit in support of the search warrant was facially invalid and that he properly rejected the defendant's alternative contention that evidence of the contents of the three handbags should nevertheless be suppressed on the ground that such evidence was seized outside the scope of the search warrant and was not admissible under the "plain view" exception to the Fourth Amendment's warrant requirement. We find and conclude, however, that the search does fall within the good faith exception articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and that accordingly, defendant's motion to suppress should be and will be denied.

### II.

Neither side makes any attack on any of the detailed findings of fact stated on pages 3 to 9, inclusive, of Judge Hamilton's report. For purposes of possible appellate review, we expressly adopt those findings of fact as our own.

The parties have objected to the portions of Judge Hamilton's careful and well-reasoned report that rejected various positions respectively maintained by both sides. We find and conclude, however, again for purposes of possible appellate review, that the

remainder of Judge Hamilton's report, beginning with the last paragraph on page 9 and continuing to the top of page 20, excepting only the discussion of the *Leon* good faith exception on pages 14 and 15 of the report, should be and is hereby approved and adopted as the conclusions of law of this Court. We cannot adopt Judge Hamilton's discussion and application of *Leon's* good faith exception for the reasons we now state.

### III.

#### A.

*Leon* reflects the latest successful tilt by a majority of the Court against the exclusionary rule in search-and-seizure cases.[1] Both sides cite and rely on *United States v. Sager,* 743 F.2d 1261 (8th Cir.1984, (on petition for rehearing), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985) (*Sager II*). That case, however, must be read in light of the Court of Appeals' original panel decision in *United States v. Little, Sager, and Harmon,* 735 F.2d 1049 (8th Cir.1984) (*Sager I*), decided shortly before *Leon* was handed down.

*Sager I* applied the new "totality of the circumstances" standard announced in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Sager I* accurately stated that the Court had abandoned the earlier standard articulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). But *Sager I* reversed the conviction of Sager and Harmon on the ground that even under the Court's "more

fluid analysis" adopted in *Gates,* rather than under "the older, more formal requirements of *Aguilar* and *Spinelli,*" the district court had erred in failing to grant those defendants' motions to suppress.[2] *Id.* at 1054–56.

The government's petition for rehearing in *Sager I,* filed July 10, 1984, was granted in light of the Court's decision in *Leon,* handed down on July 5, 1984. In *Sager II,* Judge Arnold, who also was the author of the opinion in *Sager I,* first concluded that although "*Leon* was a clear break with the past," that case was to be applied retroactively. 743 F.2d at 1263–65. *Sager II* rejected the defendant's argument the case fell within one of *Leon's* exceptions that no objectively reasonable officer could have relied on the warrant for the reason it so clearly failed to establish probable cause. *Id.* at 1265–66.

*Sager II,* however, did not alter the view expressed in *Sager I* in regard to the invalidity of the warrant. *Sager II* expressly concluded that "[w]e affirm our previous holding that the affidavit was insufficient to establish probable cause, and that the magistrate's order issued in response to it was invalid." *Id.* at 1267. The impact of *Leon's* new rule was made clear when the *Sager II* court added that:

> Under *Leon,* however, because the officers behaved themselves in an objectively reasonable fashion, the evidence seized under the unconstitutional order cannot be suppressed. Our previous direction that the convictions of Harmon and Sag-

---

1. For a different view, see the dissenting opinions in the cases cited by Justice Brennan in his *Leon* dissent, 468 U.S. at 929 n. 1, 104 S.Ct. at 3430 n. 1. Those dissenting opinions were cited to support his statement that since the Court's 1974 decision in *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974): "I have witnessed the Court's gradual but determined strangulation of the rule." This Court, of course, is under duty to follow the majority opinions in the cases cited in that footnote regardless of how it may view the force and logic of Justice Brennan's dissenting opinions.

2. The "more fluid analysis" adopted in *Gates* has not universally been accepted. *See Massachu-*

*setts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) in which the Court concluded, contrary to the conclusion of the Supreme Judicial Court of Massachusetts, that evidence should not have been suppressed under the new federal rule. On remand the Supreme Judicial Court of Massachusetts in *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985), decided the case on state law grounds and concluded that the Declaration of Rights of the Massachusetts Constitution provided more protection to a defendant than does the Fourth Amendment in the determination of probable cause. This Court, of course, must apply the new rule articulated in *Gates.*

er be reversed is set aside on rehearing, and these convictions are now

Affirmed.

*Id.*

We are satisfied that the Court of Appeals' application of *Leon* in *Sager II* and what the Supreme Court said in *Leon* supports the government's position in this case. *Leon*, for example, relied on *Spinelli* (of all cases) to support its conclusion that "great deference" must be accorded a magistrate's determination of probable cause. *Leon* recognized, of course, that "[d]eference to the magistrate, however, is not boundless." 468 U.S. at 914, 104 S.Ct. at 3416.

The Court, however, made clear that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918, 104 S.Ct. at 3418. Moreover, *Leon* stated that earlier cases had "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* Thus, the *Leon* majority, speaking of "the ordinary case," stated that:

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Id.*, [*Stone v. Powell*, 428 U.S. 465] at 498 [96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976)] (Burger, C.J., concurring). Penalizing

the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 921, 104 S.Ct. at 3419.

One defendant in *Leon* contended that "no reasonably well trained police officer could have believed that there existed probable cause to search his house...." *Id.* at 926, 104 S.Ct. at 3422. The Court concluded that where more than a "bare bones" affidavit is presented, "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Id.* *Leon* stated a general rule that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.*

The admonitionary gloss that we believe is reflected by the majority opinion in *Leon* is that the modification of the Fourth Amendment exclusionary rule made in that case requires that district courts should deny motions to suppress in all except exceptional cases "so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." [3] *Id.* at 900, 104 S.Ct. at 3409. The pending case, in our judgment is an ordinary run-of-the-mill case involving an invalid search warrant issued by a State judicial officer. [4]

---

**3.** *See also* the Court's statement that: "We have now reexamined the purposes of the exclusionary rule and the propriety of its application in cases where officers have relied on a subsequently invalidated search warrant. Our conclusion is that the rule's purposes will only *rarely* be served by applying it in such circumstances." *Id.* at 926, 104 S.Ct. at 3422. (Emphasis added).

**4.** Experience establishes that motions to suppress are infrequently filed and seldom granted in cases in which an affidavit is presented by a

federal officer and the search warrant is issued by a magistrate of this Court. For, as Chief Magistrate Hamilton's report demonstrates, the magistrates of this Court keep abreast of the shifting tides of the Supreme Court's search and seizure decisions. Indeed, the record in this case establishes that Judge Hamilton stated his tentative view at the close of the hearing that the affidavit did not state probable cause. He added that: "If somebody brought this affidavit to me I'd send them—well, it would take me about one minute to have sent them out of my

## B.

Chief Magistrate Hamilton's report accurately noted that "[t]here is no allegation or evidence that the affiant misled Judge Stitt with information that the affiant knew or should have known was false. Nor is there any allegation or evidence that Judge Stitt wholly abandoned his detached and neutral position to act as a rubber stamp." Report at 14–15. We cannot agree, however, with the recommended finding and conclusion that "the officers' reliance on Judge Stitt's determination of probable cause was objectively unreasonable, and the application of the extreme sanction of exclusion would be appropriate." *Id.* at 15.

Paragraph 6 of the adopted findings makes clear that "the typewritten portion of the affidavit was prepared [by Kramer] prior to going to see Judge Stitt" and that it was only after "Judge Stitt said it wasn't clear why Kramer thought the narcotics were in the house, [that] he told Kramer to add to the ending of the paragraph 'Because he saw it there this date.' " *Id.* at 4. The typewritten portion of the affidavit clearly suggests that Kramer had only a smattering of information in regard to the preparation of a valid affidavit and that he was under the impression that if an affidavit facially established an informant's reliability it would support the issuance of a valid search warrant.[5] The record establishes that Judge Stitt knew a bit more about what must be included in an affidavit for a search warrant than did officer Kramer.

For example, it is clear that Judge Stitt questioned Kramer about the sufficiency of the affidavit that Kramer had presented to him and that he thereafter directed Kramer to amend the affidavit. Kramer testified on cross-examination that after Judge Stitt read the typewritten portion of the affidavit: "He asked me how did the informant know that the amphetamine and cocaine were in the house." Kramer answered: "I told him that he saw the defendant go from the living room of the house to a back portion of the house and bring a quantity of the purported controlled substances from that area." Tr. at 13. Kramer testified as follows in response to Chief Magistrate Hamilton's interrogation:

Q. And when he read [the affidavit as originally presented] what question did he ask you?

A. He asked me why did I think that the narcotics were in the house at this time and because he said it wasn't clear on the second paragraph of what the informant had seen. And I told him—I said because the informant told me he had just seen it there. He said I want you to add that in the ending of the paragraph.

Tr. 18.

Kramer, of course, did add in longhand the sentence, "Because he saw it there this date" to the typewritten portion of the affidavit as directed by Judge Stitt. While the affidavit may be said to be something more than the type of "bare bones" affidavit still condemned in *Leon*, the addition of the sentence did not make it a valid affidavit.[6]

---

office ..." to prepare a valid affidavit. Tr. 59. If the State court judge had followed that practice in this case, a great deal of judicial time would have been conserved.

5. What was stated in the typewritten portion of the affidavit in regard to the prior information supplied Kramer concerning the theft of four Mazda RX-7 automobiles could be said to support a finding that Kramer's informant may have been entitled to the pseudonym of "Old Reliable," at least as far as the theft of automobiles was concerned. Whether the establishment of an informant's reliability in regard to automobile thefts would also establish reliabili-

ty in regard to drug transactions is a question we need not and do not reach.

6. *Leon's* continued condemnation of "bare bones" affidavits is established by its citation, with approval, of the portion of *Aguilar* that dealt with "bare bones" affidavits. *See* 468 U.S. at 915, 104 S.Ct. at 3416. In addition to its citation of *Aguilar, Leon* also cited and quoted from *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), which, in its turn, had cited and quoted *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), both of which condemned the use of "bare bones" affidavits.

*Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), handed down the same day as *Leon,* makes clear that the issue of the invalidity of an affidavit and the issue of objectively reasonable reliance on an invalid warrant are entirely separate issues. *Sheppard* noted that the Court had held in *Leon* that "the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid...." 468 U.S. at 987–88, 104 S.Ct. at 3427. The Court then stated that "the *sole issue* before us in this case is whether the officers reasonably believed that the search they conducted was authorized by a valid warrant." *Id.* at 988, 104 S.Ct. at 3427 (Emphasis added).

And that is the "sole issue" in this case. *Leon* concluded that in the "ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" on the theory that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 921, 104 S.Ct. at 3419. Agreement with the recommended findings that both the officer and the magistrate erred in this case does not answer the separate issue presented under *Leon*'s new rule. Those findings do not establish that the defendant carried the burden of establishing that Kramer did not reasonably believe that the search conducted in this case had been authorized by a valid warrant.

*Leon* teaches that "the officer's reliance on the magistrate's probable-cause determination ... must be *objectively* reasonable." *Id.* at 922, 104 S.Ct. at 3420 (Emphasis added).[7] Application of that objective standard to the circumstances of this case requires that we find that it was not unreasonable for Kramer to believe that Judge Stitt's suggested addition to the affidavit was sufficient to validate the affidavit.

After all, a KCPD officer certainly ought to be able to reasonably assume that a judge of the Circuit Court of Jackson County knows more about the validity of an affidavit to obtain a search warrant than he does.

We therefore conclude that we cannot accept the recommended conclusion that "no reasonably well-trained officer should rely on a warrant based on an affidavit so lacking in indicia of probable cause as did the affidavit in this instance." Report at 15. We find and conclude that Kramer's reliance on Judge Stitt's determination of probable cause was objectively reasonable when considered in light of the fact Kramer amended his affidavit in accordance with Judge Stitt's recommendation. The fact that Judge Stitt's recommendation did not validate the affidavit is irrelevant.

When the Supreme Court applied the principles articulated in *Leon* to the factual circumstances presented in *Massachusetts v. Sheppard,* it made clear that we "hold only that it was not unreasonable for the police in this case to rely on the judge's assurances that the warrant authorized the search they had requested." 468 U.S. at 989, 104 S.Ct. at 3428. We make the same holding in this case.

Accordingly, it is

ORDERED that the defendant's motion to suppress should be and the same is hereby denied.

---

**7.** *See also id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23, on that page when *Leon* stated that the "good-faith inquiry is confined to the *objectively ascertainable question* whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." (Emphasis added).