Billy Reece CRAIN *v.* STATE of Arkansas

CA CR 01-944 79 S.W.3d 406

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 26, 2002

*Robert L. Herzfeld, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

L ARRY D. VAUGHT, Judge. Appellant was found guilty of manufacturing methamphetamine, possession of a con-

trolled substance, possession of drug paraphernalia with the intent to manufacture, and maintaining a drug premise. Appellant received the minimum sentence for each crime, and the sentences were ordered to run concurrently. Appellant argues that the trial court erred in its determination that sufficient grounds to support a nighttime search were stated in the affidavit for a search warrant. Additionally, appellant argues that the good faith exception to the exclusionary rule is inapplicable to the case at bar. We affirm.

On or about September 23, 1999, the Grant County Sheriff's Office received information, via the Pine Bluff Sheriff's Office, from a confidential informant that there was a methamphetamine lab on County Road 213 in Grapevine. After investigating the alleged site of the lab and noticing a strong odor of ether near appellant's residence, Sheriff Bob Adams requested a warrant to perform a nighttime search of appellant's trailer. In addition to the boilerplate language contained in most affidavits to support a nighttime search, the affiant stated that he "observed a subject standing at the side of the residence, apparently acting as a lookout" and that he smelled a chemical known to be used in the preparation of methamphetamine. Sheriff Adam's request for a warrant authorizing a "no-knock" nighttime search of appellant's trailer was granted at 1:00 a.m. on September 24, 1999. The warrant was executed shortly thereafter. Appellant filed a motion to suppress the evidence obtained during the search, alleging that there was not sufficient probable cause to support a nighttime search. Appellant's motion to suppress was denied and a Grant County jury ultimately found him guilty of the aforementioned charges. This appeal follows.

In support of his first point on appeal, appellant argues that there was not reasonable cause to justify a nighttime search and that the trial court should have suppressed the evidence discovered during the illegal search. When this court reviews a trial court's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances. *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000). We will reverse a trial court's ruling on a motion to suppress only if the ruling was clearly erroneous or clearly against the preponderance of the evidence. *Id.* Because the determination of a preponderance of the

evidence turns on questions of credibility and the weight to be given testimony, we defer to the trial judge's superior position in this regard. *Lemons v. State*, 310 Ark. 381, 836 S.W.2d 861 (1992).

■ Before a nighttime search warrant may be issued, the issuing judicial officer must have reasonable cause to believe that 1) the place to be searched is difficult to access speedily; or 2) that the objects to be seized are in danger of imminent removal; or 3) that the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which are difficult to predict with accuracy. Ark. R. Crim. P. 13.2(c); *Townsend v. State*, 68 Ark. App. 269, 6 S.W.3d 133 (1999). The affidavit must set out facts showing reasonable cause to believe that circumstances exist which justify a nighttime search. *Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990).

■ As appellant correctly points out, there was no specific information in the affidavit presented to the magistrate that falls under any of the three justifications for nighttime searches. The only information in the affidavit specific to appellant's residence was the smell of a chemical emanating from the area and a person standing outside of his home. Our supreme court has clearly held that a strong odor of ether is not a reasonable basis for a nighttime search. *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999).

■ The State contends that the allegation of a lookout is sufficient to establish probable cause for a nighttime search because of "safety concerns." While it is true that the State need only show the existence of a single factor to justify a nighttime search, *see Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996), we cannot accept that an allegation of a person standing in front of a residence (that the officer concludes is a lookout) is proof that "the warrant can only be safely or successfully executed at nighttime." The State argues that *McCormick v. State*, 74 Ark. App. 349, 48 S.W.3d 549 (2001), supports a contrary conclusion. However, in *McCormick,* the affidavit established that the safety concern relating to the suspects' use of high-tech surveillance equipment to observe persons approaching the area justified a nighttime search. Observing a person standing outside of a residence is far less per-

suasive on the issue of safety than the known use of high-tech surveillance and in the present case does not justify a nighttime search. Therefore, we are convinced that there was not sufficient probable cause to support a warrant for a nighttime search of appellant's trailer.

 We now turn to the issue of the good-faith exception to the exclusionary rule. When an officer relies in "good-faith" on a search warrant that is later determined to be unsupported by probable cause, any evidence discovered by reason of that search will not be suppressed. *United States v. Leon,* 468 U.S. 897 (1984). While *Leon* involved analysis of probable cause for a search under the Fourth Amendment, and this case involves consideration of a nighttime search under the Arkansas Rules of Criminal Procedure, our supreme court has adopted and applied the reasoning contained in *Leon* to nighttime searches in Arkansas. *See, e.g., Fouse, supra.* However, the application of the good-faith exception is not absolute. A police officer may not rely entirely on the magistrate's finding of probable cause; any material false statements or misrepresentation in the police officer's affidavit will deny the State the benefit of the exception to the exclusionary rule. *See Malley v. Briggs,* 475 U.S. 335 (1986); *Leon, supra; Yancey v. State,* 345 Ark 103, 44 S.W.3d 315 (2001).[1]

 In our determination of whether or not the good-faith exception applies, we look to the totality of the circumstances and may consider unrecorded testimony given to the magistrate as well as facts known by the officer but not communicated to the magistrate. *Moya v. State,* 335 Ark. 193, 981 S.W.2d 521 (1998). We must decide if it was objectively reasonable for a "well-trained police officer" to conclude that the nighttime search was supported by probable cause. *Anderson v. Creighton,* 483 U.S. 635 (1987); *Moya, supra.*

The United States Court of Appeals for the Eighth Circuit provides guidance for our understanding of the objective standard of good faith articulated by the *Leon* court in determining what a

---

[1] Contrary to the dissent's understanding of the majority viewpoint, we do not contend that a magistrate's finding of probable cause is dispositive on the "good-faith" question and affirmatively so state in this section of the opinion.

reasonable, "well–trained police officer" would have believed constitutes probable cause. In *United States v. Martin,* 833 F.2d 752 (8th Cir.1987), the court reasoned:

> Although a police officer may not rely entirely on the magistrate's finding of probable cause, in cases where, as here, the courts cannot agree on whether the affidavit is sufficient, it would be unfair to characterize the conduct of the executing officers as bad faith, particularly where there has been no material false statements or misrepresentations in the affidavit and where the officer is acting in good faith.

• • •

> When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable. . . . The facts of this case closely resemble those in *United State v. Fama,* 758 F.2d 834 (2d Cir. 1985), wherein the court applied the good faith exception and reversed the order of the district court suppressing illegally seized evidence of drug trafficking. After reviewing the facts the court concluded that any error must be attributed to the issuing magistrate rather than the investigating officers. "The affidavit provided evidence to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the judge's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate."

*Id.* at 755–56 (citation omitted).

Our supreme court in *Yancey, supra,* looked to *Leon* in deciding how to apply the good–faith exception in the "ordinary case":

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 118, 44 S.W.3d at 325 (citations omitted). The application of *Leon's* objective prong to the "ordinary case" is further

explained in *United States v. Wunder,* 663 F. Supp 803 (W.D. Mo. 1987):

> One defendant in *Leon* contended that "no reasonably well trained police officer could have believed that there existed probable cause to search his house. . . ." The Court concluded that where more than a "bare bones" affidavit is presented, "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Leon* stated a general rule that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." The admonitionary gloss that we believe is reflected by the majority opinion in *Leon* is that the modification of the Fourth Amendment exclusionary rule made in that case requires that district courts should deny motions to suppress in all except exceptional cases "so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." The pending case, in our judgment is an ordinary run-of-the-mill case involving an invalid warrant issued by a State judicial officer.

*Id.* at 806 (citations omitted). Like *Wunder,* the case at bar is also an "ordinary run-of the-mill case" involving an invalid warrant issued by a State judicial officer.

When assessing a "good faith" reliance on the magistrate's determination of probable cause, we can, and must, look to the totality of the circumstances including what Sheriff Adams knew, but did not include in his affidavit.[2] In the case at bar, Sheriff Adams offered the following information (in addition to the "bare-bones" or boilerplate language) in his affidavit to support

---

[2] Two facts contained in the trial court's letter opinion are beyond the scope of even an examination of the "totality of the circumstances." Specifically these facts are 1) that when appellant answered the officer's knock on the door of his residence (immediately prior to executing the search) he was armed with a handgun, and 2) that Sheriff Adams had been informed that an officer in Cleveland County's Sheriff Office believed that appellant was a "violent person."

his request for a nighttime search: 1) he received credible information that appellant was presently manufacturing methamphetamine; 2) within two hours of the request, while conducting surveillance of appellant's residence, he smelled a chemical known to be used in the manufacture of methamphetamine; 3) he observed a person acting as a lookout. Additionally, in the hearing on the motion to suppress the following facts (that were known to Sheriff Adams, but that he did not include in the affidavit) were established: 1) a large bonfire was burning at the side of the residence; 2) the residence was located about sixty yards from the road; 3) anyone who approached the residence would be in open view.

■ There is no evidence that Sheriff Adams made "material false statements or misrepresentations" in the affidavit, there is no evidence that the judicial officer "abandoned his detached and neutral role," and the affidavit provided evidence to "create disagreement among thoughtful and competent judges as to the existence of probable cause." Sheriff Adams offered an affidavit that contained more than boilerplate language and conclusions to justify his search request. Both the issuing magistrate and Sheriff Adams believed that sufficient probable cause existed to support a nighttime search. We conclude that a reasonable, "well-trained police officer" would have also believed, albeit incorrectly, that a nighttime search of appellant's home was justified. Therefore, the good-faith exception to the exclusionary rule is applicable to the case at bar and supports the trial court's denial of appellant's motion to suppress. We affirm.

Affirmed.

JENNINGS, ROBBINS, and CRABTREE, JJ., agree.

GRIFFEN and BAKER, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I agree with the majority decision that the affidavit failed to demonstrate reasonable cause to justify a nighttime search and that the failure was a substantial violation. However, I would hold that the police officers failed to act in "good faith" pursuant to *United*

*States v. Leon*, 468 U.S. 897 (1984), such as to salvage the defective nighttime search. *Leon* utilizes an objective standard, and considers what a reasonably well-trained police officer would have believed to be reasonable cause to warrant a nighttime search. *See id.* There is simply no basis for finding that the officers had a "good faith" basis for believing that there was good and sufficient probable cause to justify a nighttime search of appellant's residence. Therefore, I respectfully dissent from the decision to affirm. Instead, I would reverse and remand the conviction.

As I understand the majority's viewpoint, the fact that two judges (the initial magistrate and the circuit judge) found the affidavit for a nighttime search warrant adequate is dispositive on the "good faith" question. If that is the standard, I have not found it in any cases. Moreover, that reasoning cannot withstand scrutiny when one remembers that in every instance where the legality of a search is challenged on appeal following issuance of a warrant — for a nighttime search or otherwise — the question would not be before us on appeal if the initial request for a warrant had not been granted by at least one judicial officer, *i.e.*, the judge to whom the affidavit for search warrant was initially presented.

In *Garner v. State,* 307 Ark. 353, 820 S.W.2d 446 (1991), the appellant moved to suppress evidence, and argued that the affidavit contained insufficient facts to support a nighttime search. Our supreme court agreed. After determining that the violation was substantial, the court considered whether the officers acted in "good faith" pursuant to *Leon, supra.* The court recognized four situations in which an objective "good faith" by police officers will not overcome a defective search. These situations include when 1) the officers misled the judicial officer with information that the officers knew to be false or should have known to be false, 2) the judicial officer acts as an adjunct police officer, 3) the affidavit is so deficient on its face that it is unreasonable for an officer to consider that reasonable cause existed, and 4) the warrant fails to sufficiently identify the place to be searched or the items to be seized. In examining the "good faith" exception, the *Garner* court stated as follows:

> Our concern today is for the integrity of our Rules. If they are to have any meaning relative to nighttime searches, more must be shown the municipal judge than was offered in this case. Subjectively, the executing officers no doubt believed that they were complying with the law because they were using a printed form. Objectively, the affidavit and warrant were lacking in any indicia of a reasonable cause for a nighttime search other than a reiteration of the conclusory language in our Rules.

*Id.* at 359-60, 820 S.W.2d 446, 450.

This is not a question of federal law. Arkansas law and our Rules of Criminal Procedure prescribe certain standards before a nighttime search warrant can issue. Our case law is controlling. Given that a nighttime search is, in itself, an exception under our own law, our courts have resisted the temptation to lower the threshold for conducting nighttime searches. This decision flies in the face of that reluctance.

Although Adams did not mention the following facts in the affidavit or in sworn testimony to the magistrate, the trial court allowed him to testify over appellant's objection that: 1) the area was dark except for a large bonfire that was burning beside the residence that illuminated the outside structure; 2) a female was pacing in front of the residence between the house and the fire; 3) the female would watch with intensity as vehicles drove by; 4) the female was outside the first time the officers drove by; 5) the female was still outside ten minutes later when the officers drove by again; 6) Adams contacted the Cleveland County authorities, who indicated that appellant had a temper and that "he did have a propensity for violence somewhat." Taken together, Adams's statements could not have led a reasonably well-trained police officer to believe that reasonable cause existed to justify a nighttime search. The officer's reference to a large bonfire that illuminated the structure contradicts the "cover of darkness" that often justifies a nighttime search. Also, the mere fact that a female was pacing in front of the residence when the officers initially drove by and was still present when the officers drove by ten minutes later does not support a reasonable inference, let alone compel the con-

clusion on the part of a reasonably well-trained officer, that the female was acting as a lookout such as to necessitate a nighttime search.

In rendering its ruling, the trial court noted that it considered extraneous evidence known to the officers at the time of the application to determine whether the officers acted in "good faith" pursuant to *Moya v. State*, 335 Ark. 193, 981 S.W. 2d 521 (1998). While the trial court did not err in considering unrecorded oral testimony to determine whether the officers acted in good faith, the court did err in considering facts that were not supported by the evidence, and circumstances that occurred after the warrant was executed. These facts included 1) that anyone who approached the residence would be in open view, and 2) that the affiant had been informed by a deputy sheriff that in his opinion appellant was a violent person, 3) that appellant came to the door armed with a loaded handgun and 4) that numerous items used to manufacture methamphetamine were confiscated as a result of the search.

Given the deficiencies in the affidavit, the lack of indicia of a reasonable cause for a nighttime search provided by Adams's unsworn testimony, and the trial court's reliance on facts that were not supported by the evidence, I would hold that the totality of the circumstances fail to demonstrate that the officers had a "good faith" basis for believing that there was good and sufficient probable cause to justify a nighttime search of appellant's residence. Thus, I respectfully dissent from the decision to affirm the conviction, and would reverse and remand instead.

I am authorized to state that Judge BAKER joins in this dissent.