**UNITED STATES of America,
Appellant,**

v.

**Barbara FAMA, Defendant-Appellee.**

**No. 626, Docket 84–1369.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 20, 1984.

Decided March 27, 1985.

Mary McGowan Davis, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellant.

Stanley M. Meyer, New York City (Frank A. Lopez, Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.

MESKILL, Circuit Judge:

In this expedited appeal, the United States challenges that part of an order of the United States District Court for the Eastern District of New York, Sifton, J., that suppressed evidence seized from appellee's home on September 6, 1984 pursuant to a search warrant. The district judge ruled that the warrant was invalid for lack of probable cause. Moreover, he found the accompanying affidavit too weak to support a reasonable, official belief in the existence of probable cause.

We disagree. While we acknowledge that a creditable probable cause question is raised, we do not reach it because we believe that, under the circumstances, we are compelled by *United States v. Leon*, — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to reverse the suppression order.

BACKGROUND

In April 1984, pursuant to a warrant, the Fama home was searched. A truly astonishing quantity of evidence was seized from throughout the house, including approximately thirteen pounds of heroin; two and one-half pounds of cocaine; almost one hundred pounds of marijuana; over $3.4 million in cash; more than twenty-five firearms, at least seven of which were loaded, including semi-automatic pistols, revolvers and rifles, and large quantities of narcotics dilutents and other drug paraphernalia. As a result of the search, Barbara Fama, her husband and four children were all arrested. They are currently under indictment in the Eastern District of New York for a number of narcotics and firearms violations.

In June 1984, appellee and three of her children posted bail and were released on personal recognizance bonds. Their trial date was set for early September.

On September 6, 1984, appellee was arrested again. This arrest was based on charges arising from a narcotics investigation conducted by the United States Attorney for the Southern District and the Drug Enforcement Administration (DEA) and unrelated to the investigation that had led to appellee's first arrest. The target of the Southern District investigation, which had been ongoing since at least June 1984, was a large-scale narcotics trafficking ring operating in the lower East Side and Little Italy areas of Manhattan.

On or about September 5, 1984, DEA Special Agent Emilio Garcia went to an assistant United States Attorney (AUSA) in the Southern District and related to him the results of the investigation. The thirty-one page affidavit drafted by the AUSA and sworn to by Agent Garcia was filed with warrant applications on September 5 with the district court in the Southern District. The application sought arrest warrants for thirty individuals, including appellee Fama. Judge Cannella requested additional information on four of the named suspects. After hearing Agent Garcia's supplementary statements, Judge Cannella found probable cause as to all thirty suspects and issued the arrest warrants. He found probable cause as well to issue twenty search warrants, also on the strength of the thirty-one page affidavit, for premises within the Southern District.

The identical affidavit was presented to Judge Costantino in the Eastern District. He found probable cause to support the issuance of warrants for about thirteen premises located in the Eastern District, including appellee's home. This warrant and the subsequent search of the Fama home, which yielded $134,000 in cash and assorted items of drug paraphernalia, some coated with narcotics residue, is the subject of the instant appeal.

The affidavit that supported the arrest and search warrants contained the following information. Through intercepted phone conversations, investigating agents had learned that a narcotics transaction involving John DeLutro and Louis "Papo"

Garcia, two purportedly high level members of the drug trafficking organization, was to take place at "DeLutro's shop" at about 8:00 p.m. on July 31, 1984. Accordingly, surveillance was set up in the vicinity of Caffe Palermo, which was run by DeLutro, at 148 Mulberry Street in the Little Italy section of Manhattan. At about 7:30 p.m., appellee Fama was seen at the restaurant meeting with Albert Palmieri. Palmieri, Fama's uncle, was believed to be one of DeLutro's chief lieutenants in the narcotics ring.

At about 9:00 p.m., Papo entered 166 Mulberry Street, a multi-unit dwelling and home to both DeLutro and Palmieri. Fama and Palmieri entered the building a short time after Papo. At about 10:00 p.m., Papo left the building. Fama and Palmieri followed after a brief interval.

At about 10:30 p.m., Papo and another suspect were seen in Papo's car near Mulberry and Grand Streets. Papo then drove to the lot where DeLutro was known to park his car and made a call on a public phone. Shortly thereafter, Papo and DeLutro had a meeting in the parking lot and DeLutro handed to Papo what detectives believed was a key.

Papo returned to 166 Mulberry Street, cradling an obvious bulge under his shirt, and let himself in with a key. Palmieri entered the building shortly after Papo. In a short time Papo left the building, the bulge having disappeared, and he returned to the parking lot where he again met with DeLutro. He handed DeLutro a key. DeLutro returned to Caffe Palermo and met with Palmieri.

The affidavit does not mention whether or when Fama left Caffe Palermo. According to the prosecution's version of the facts, Fama furnished the necessary cash for the July 31 transaction. The only other information in the affidavit that related specifically to appellee was a brief description of the amazing hoard of drugs, cash and firearms seized from the Fama home in April. The affidavit also noted that she was free on bail and awaiting trial in the Eastern District.

Appellee's motion to suppress the evidence seized in September was made in the course of the Eastern District pretrial proceedings which stemmed from her arrest in April. It was heard with a number of other motions, including motions brought by appellee, her husband and the four children, to suppress the evidence seized in the April search. The September seizure became an issue when the AUSA for the Eastern District announced her intention to introduce that evidence against appellee.

In a written memorandum decision and order dated September 24, 1984, Judge Sifton ruled that the evidence seized in September had to be suppressed. He posited that "the only plausible explanation for the issuance of the warrant appears to be some oversight resulting from the large number of warrants being applied for at the same time as part of a large scale narcotics investigation in another district." Gov't App. at 224–25. Because the affidavit contained such an abundance of details, he suggested, neither the law enforcement officials nor the issuing judge focused attention specifically on whether there was probable cause to search appellee's house. He further indicated that, in light of the contemporaneous involvement of the entire family in pretrial hearings, the information contained in the affidavit did not make probable the presence of additional contraband in the Fama home. *Id.* at 225. Indeed, Judge Sifton found the supporting affidavit "so lacking in information on the basis of which to conclude that contraband would again be found in the Fama residence that official belief in the existence of probable cause, even given the issuance of the warrant, would be wholly unreasonable." *Id.* at 224.

## DISCUSSION

In *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court continued the retrenchment of the Fourth Amendment exclusionary rule by creating a good-faith exception. *See also Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737

(1984) (exclusionary rule not applicable to search conducted pursuant to technically defective warrant where officers reasonably believed search was authorized by valid warrant); *cf. Massachusetts v. Upton,* — U.S. —, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (per curiam); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The issue in *Leon,* as framed by the Court, was whether the "exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon,* 104 S.Ct. at 3409.

The Court began its discussion by reiterating that the rule is not " 'a personal constitutional right of the person aggrieved' " but rather " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Id.* at 3412 (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). The appropriateness of the exclusionary sanction in a particular case "is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' " *Id.* (quoting *Illinois v. Gates,* 462 U.S. at 223, 103 S.Ct. at 2323). Describing the balancing approach that had emerged from its recent Fourth Amendment suppression cases, the Court explained that the exclusionary rule should apply only where its substantial social costs are outweighed by its deterrent value. *Id.* 104 S.Ct. at 3411–16.

Turning to the specific situation before it, the Court reasoned that when law enforcement officers have acted in objectively reasonable reliance on a warrant subsequently invalidated because the issuing judge or magistrate made an erroneous probable cause determination, suppression is unlikely to deter future unconstitutional conduct. *Id.* at 3419. The Court stated that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* In conclusion the Court held that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 3423.

*Leon* clearly controls this case. Applying the *Leon* template to the situation before us, we note first that no one has claimed that Judge Costantino abandoned his role or that Agent Garcia was either dishonest or reckless. The issue is, therefore, whether under the circumstances a reasonably well trained officer could have held an objectively reasonable belief that there was probable cause to search appellee's home. We conclude that the good-faith exception announced in *Leon* precludes suppression in this case.

Before applying for any warrants, Agent Garcia sought the expertise of an AUSA. The AUSA drafted the affidavit based on Agent Garcia's information. Judge Cannella carefully reviewed the affidavit and found probable cause to arrest appellee for suspected involvement in a massive drug trafficking conspiracy. The expertise of the AUSA, Judge Cannella's findings and Judge Costantino's issuance of the warrant were factors which supported an objectively reasonable belief in probable cause to search appellee's home.

■ In granting the motion to suppress, Judge Sifton suggested that appellee's involvement in pretrial proceedings relating to the April arrest made it unlikely that she would simultaneously maintain contraband in her home. We fail to see the logic in this reasoning. While it may not have been the most prudent course, continuation of the operation, albeit on a significantly reduced level, may have been appellee's only way to generate income. The huge scale of the business operating from the Fama home in April, indicated best

perhaps by the $3.4 million in cash on hand, is perfectly consistent with the belief that the Famas, appellee included, were incorrigible criminals. Under the circumstances, including the apparent agreement of an AUSA and two district judges, we do not believe that the fact of the ongoing judicial proceedings was inconsistent with a reasonable belief that Fama was counting on DEA naivete and was again involved in narcotics trafficking. While probable cause to arrest does not necessarily give rise to probable cause to search, Agent Garcia had stated in the affidavit that his ten year experience as a DEA agent had taught him that major drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities. A number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application. *E.g., United States v. Young,* 745 F.2d 733, 758 (2d Cir.1984); *United States v. Foster,* 711 F.2d 871, 878 (9th Cir.1983), *cert. denied* — U.S. —, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *See also Texas v. Brown,* 460 U.S. 730, 746, 103 S.Ct. 1535, 1545, 75 L.Ed.2d 502 (1983) (Powell, J., concurring in the judgment). Thus it should also be considered as a factor contributing to objective good faith. We thus reject Judge Sifton's conclusion that the mere pendency of the ongoing proceedings made it so unlikely that Fama would keep contraband at her home that the officers could not have had a reasonable belief that there was probable cause for the warrant.

■ Appellee argues that the information implicating her was stale and therefore could not allow a reasonable belief in probable cause. We disagree. Although the search warrant was issued thirty-five days after the Caffe Palermo incident, it was sought at the culmination of a major investigation into ongoing, long-term criminal activity. Such a time lag under these circumstances will generally not affect probable cause. *United States v. Foster,* 711 F.2d at 878–79. We also note that Judge Cannella identified no staleness problem when he found probable cause to arrest appellee. A common sense view of all of the circumstances belies the contention that the five week interval precluded an objectively reasonable belief in probable cause to search. *Cf. United States v. Beltempo,* 675 F.2d 472, 477–78 (2d Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982).

■ Fama, noting that Palmieri is her uncle and that her mother resides at 166 Mulberry Street, claims that an objective belief in probable cause was not possible because a perfectly innocent explanation existed for her conduct on July 31, 1984. The fact that an innocent explanation may be consistent with the facts alleged, however, does not negate probable cause. *United States v. Ivic,* 700 F.2d 51, 57 (2d Cir.1983); *United States v. Webb,* 623 F.2d 758, 761 (2d Cir.1980). Neither should it preclude a good faith belief in probable cause.

■ The circumstances, viewed in their totality, were fully consistent with an objectively reasonable belief by Agent Garcia that probable cause existed to search appellee's home. If the warrant was invalid, the error was attributable to the issuing judge not to any of the investigating officers. Agent Garcia's conduct was fully consistent with the professionalism we expect from law enforcement officials. Once the warrant was issued, Agent Garcia had done everything he could to comply with the law. *Leon,* 104 S.Ct. at 3419. Suppression in this case would disserve the deterrent function of the exclusionary rule. The affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the [judge's] determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Id.* at 3423.

That part of the district court's order that suppressed the evidence seized from appellee's home in September is reversed

and the matter is remanded to the district court for further proceedings.