**UNITED STATES of America**

v.

**Timothy L. TURNER.**

**Crim. No. 88–51–1.**

United States District Court, D. Vermont.

April 25, 1989.

John Conroy, Asst. U.S. Atty., Burlington, Vt., for the U.S.

Jerome F. O'Neill, O'Neill and Crawford, Burlington, Vt., for defendant.

OPINION AND ORDER

COFFRIN, District Judge.

On September 7, 1988, defendant Timothy L. Turner brought a motion to suppress material seized during a search of his residence alleging that the search warrant was executed without probable cause. Turner also argued that the warrant was not protected by the good faith exception to the exclusionary rule. The disposition of this motion was referred to United States Magistrate Jerome J. Niedermeier. In an opinion, dated November 9, 1988, Magistrate Niedermeier recommended that the court grant defendant's motion to suppress. Pending before the court is the Government's objection to Magistrate Niedermeier's report and recommendation. For the

reasons which follow we now affirm Magistrate Niedermeier's recommendation.

## BACKGROUND

On January 23, 1984, Corporal Miner W. Tuttle of the Burlington Police Department applied for a search warrant to search defendant's residence for evidence of a gambling operation. The application was prepared with the assistance of Chittenden County Deputy State's Attorney John R. Churchill and was supported by Tuttle's affidavit. The affidavit set forth information given to Tuttle by an informant.

Tuttle's affidavit represents that the informant's information "has been reliable and substantiated by independent investigation in the past...." Affidavit of Miner W. Tuttle at ¶ A. However, Tuttle provides no further details concerning the informant's reliability. The affidavit further provides that the informant has personal knowledge of gambling activities at defendant's residence. *Id.* at ¶ B. The informant described the procedure for placing bets over the telephone and provided Tuttle with defendant's unlisted telephone number. *Id.* at ¶¶ B–G. The informant stated that defendant determined betting odds by making daily telephone calls to Florida. *Id.* at ¶ C. According to the informant, collections were delivered to defendant's house on Tuesdays. *Id.* at ¶ E. Tuttle's informant also indicated that defendant maintained records of the gambling transactions which could be found in the house. *Id.* at ¶¶ H–I. Finally, the informant stated that he was "sure" bets were made on the Super Bowl which was played on January 23, 1984.[1] *Id.* at ¶ J. The only corroboration of the informant's tip was that "Sgt. Ruggeiro [sic], Vermont State Police, told Affiant that the telephone number was Turner's and that the telephone bill for last month was $1400.00." *Id.* at ¶ K. Although the affidavit states that the informant gave his tip to Tuttle on January 20, 1984, the affiant does not indicate when the

informant observed defendant's gambling operation.

Based on the application and affidavit, Vermont District Court Judge Edward Cashman found probable cause and issued the search warrant. The search was executed on January 23, 1984 and resulted in the seizure of drugs, money and gambling records. As a result of the search, defendant was indicted on July 28, 1988 for violation of 18 U.S.C. § 1084 and 26 U.S.C. § 7203.

Defendant made two arguments in his motion to suppress. First, defendant argued that probable cause was lacking because (i) the affidavit's reference to the informant's reliability consisted of a conclusory statement; (ii) the statements were not adequately corroborated by police investigation; and (iii) the informant's information contained no reference as to when he observed the criminal activity. Second, defendant argued that the warrant was so lacking as to fail to meet the good faith exception to the exclusionary rule. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Magistrate Niedermeier agreed with both contentions and recommended that the motion to suppress be granted. The government objected to this recommendation by arguing that the warrant was issued with probable cause and that the evidence should be admissible under the good faith exception to the exclusionary rule.

## DISCUSSION

Upon objection to a magistrate's report and recommendation, the court must make a *de novo* review of those portions of the report to which objection is made and accept, reject, or modify, in whole or in part, the magistrate's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); Local Rule D(II), Rules for United States Magistrates, U.S. Dist. Court, D.Vt. Upon a de novo review of the record, we agree with the

---

1. As Magistrate Niedermeier, a professional football aficionado, pointed out, the informant's statement that the Super Bowl was played on January 23, 1984 was incorrect. In fact, the Super Bowl was played on January 22, 1984.

*United States v. Turner,* No. 88–51, slip op. at 16, n. 2 (D.Vt. Nov. 9, 1988) (Magistrate's Report and Recommendation) (citing *Official Game Program, Super Bowl XXI, Denver Broncos v. New York Giants,* at 67 (1987)).

magistrate that defendant's motion to suppress should be granted.

### 1. *Probable Cause*

█ A valid search warrant may only be issued upon an affidavit or complaint which sets forth facts establishing probable cause. U.S. Const. amend IV; Fed.R.Crim. P. 4(a). To demonstrate probable cause, an affidavit must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime. *Berger v. New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967); *United States v. Laws,* 808 F.2d 92, 94 (D.C.Cir.1986) (footnote omitted). To determine whether a search warrant is supported by probable cause, a flexible totality-of-the-circumstances standard is employed. *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *see United States v. Feliz–Cordero,* 859 F.2d 250, 252 (2d Cir. 1988). According to the *Gates* Court:

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.[2]

*Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332 (citations omitted). Although the *Gates* decision rejected the "two-pronged test" established in *Aguilar v. Texas,* 378 U.S. 108,

84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) an informant's "veracity," "reliability," and "basis of knowledge" are "relevant considerations in the totality-of-the-circumstances analysis.... [A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329 (citations omitted).

In the present case defendant has argued that the warrant was deficient in several respects: (i) the affidavit failed to substantiate the conclusion that the informant was reliable; (ii) the informant's tip was not substantially corroborated by the police; and (iii) from the face of the affidavit the magistrate was unable to determine whether the information was stale. Each contention will be considered in turn.

The first asserted deficiency is that the affidavit fails to provide any basis for the conclusion that the informant's information "has been reliable and substantiated by independent investigation in the past ..." Affidavit of Miner Tuttle at ¶ A. Defendant argues that this declaration is similar to the affidavit in *Aguilar,* 378 U.S. at 109, 84 S.Ct. at 1511, which stated that the "[a]ffiants have received reliable information from a credible person." The *Aguilar* Court found the affidavit to be deficient and held:

> the magistrate must be informed of some of the underlying circumstances ... from which the officer concluded that the informant ... was "credible" or his information "reliable." Otherwise, "the in-

---

**2.** The government argues that Magistrate Niedermeier erred in conducting a *de novo* probable cause determination instead of deciding whether the issuing judge had a "substantial basis" for his probable cause determination. The government is correct in arguing that "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). However, the Court in *Leon,* 468

U.S. at 914, 104 S.Ct. at 3416 determined that "[d]eference to the magistrate ... is not boundless." Rather, "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915, 104 S.Ct. at 3416 (quoting *Illinois v. Gates,* 462 U.S. at 239, 103 S.Ct. at 2332). In the present case, we do not believe that the affidavit provided the issuing judge with sufficient information for determining the existence of probable cause. Therefore, the issuing judge's determination should not be given substantial deference.

ferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime."

*Aguilar,* 378 U.S. at 114–15, 84 S.Ct. at 1514 (citations omitted). *See Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589 ("[t]hough the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion."); *Laws,* 808 F.2d at 100 (affidavit's statement that "S–1 is a responsible person," is a self-serving label which is not a substitute for facts upon which a magistrate can assay the reliability of the source).

However, the statement in the present case is not as conclusory as in *Aguilar.* Rather, the affiant declares that the informant has been "reliable and substantiated by independent investigation in the past." Affidavit of Miner Tuttle at ¶ A. This declaration is similar to the affidavit in *Jones v. United States,* 362 U.S. 257, 267–68, n. 2, 80 S.Ct. 725, 734, n. 2, 4 L.Ed.2d 697 (1960), where the affiant stated that the informant "has given information to the undersigned on previous occasion and which was correct...." According to the Court, this declaration indicated that the "informant had previously given accurate information." *Id.* at 271, 80 S.Ct. at 736. However, the Court's eventual finding of reliability was based in part on the fact that the informant's story was corroborated by other sources. *Id.* Therefore, while "the assertion that the source had previously given correct information ... is entitled to weight as a factor establishing previous reliability ... such a recital, standing alone, may not be enough." *United States v. Bruner,* 657 F.2d 1278, 1296–97 (D.C.Cir. 1981) (quoting *United States v. Watts,* 540 F.2d 1093, 1097–98 (D.C.Cir.1976)); *see United States v. Missouri,* 644 F.Supp. 108, 110–11 (E.D.Mich.1986) (the statement that there is "an established reliable informant" does not suffice to establish credibility). Rather, as in *Jones,* corroboration is also needed to establish the reliability of the tip. *See Bruner,* 657 F.2d at 1297 (recital that informant had been reliable in the past was substantiated through ample corroborating information); *Gonzales v. Beto,* 425 F.2d 963, 969–70 (5th Cir.), *cert. denied,* 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed. 2d 189 (1970) (corroboration significantly buttressed tips where affiant stated that informant had been reliable in the past).[3]

The second deficiency asserted by the defendant concerns the corroboration of the informant's tip. An informant's reliability and accuracy may be strengthened by verification of particular aspects of the informant's story. *Laws,* 808 F.2d at 100. According to the *Spinelli* Court, such corroboration relates to reliability, "because [if] an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts." *Spinelli,* 393 U.S. at 427, 89 S.Ct.

---

**3.** Courts are not in complete agreement on this issue. According to 1 W. Ringel, *Searches & Seizures, Arrests and Confessions,* § 4.3(a)(1) at 4–38 (1988) (footnotes omitted):

[s]tatements that the informant's information proved to be "reliable in the past" ... have been held by several courts to be sufficient recitations of veracity. Many courts, however, require a more detailed showing of the facts upon which this conclusion of past reliability is based, since the officer interested in obtaining a warrant may characterize as "reliable" an informant who has provided inaccurate information on more occasions than he has provided accurate information.

Despite this split of authority, we believe that more is needed to substantiate the reliability of the tip. We note that a more preferable approach would have been to include facts to substantiate the affiant's statement that the informant was reliable in the past. For example, Tuttle's statement would have been bolstered by a recitation of the informant's "track record" in providing information leading to arrests or convictions, *United States v. Bagaric,* 706 F.2d 42, 66 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), a description of the informant's cooperation with the police as a contact or "agent" in the investigation, *United States v. Woolery,* 670 F.2d 513, 515–16 (5th Cir.), *cert. denied,* 459 U.S. 835, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982), or an indication that the informant's statement implicated him in criminal wrongdoing. *United States v. Schwimmer,* 692 F.Supp. 119, 126 (E.D.N.Y.1988). However, such facts are noticeably absent from the affidavit.

at 594; *see Gates,* 462 U.S. at 244, 103 S.Ct. at 2335.

In the present case two of the informant's facts were corroborated: the unlisted telephone number and the fact that defendant had a large telephone bill consistent with the long-distance use described by the informant. However, unlike *Gates,* neither fact is sufficiently detailed such that it raises the credibility of the informant's tip.

In *Gates,* the police received an anonymous letter which stated that Sue and Lance Gates had $100,000 worth of drugs in the basement of their home in Illinois and gave a detailed description of their plan to purchase drugs in Florida. According to the letter, Sue would drive the car to Florida on May 3, Lance would fly to Florida a few days later, and Lance would drive the car back with $100,000 worth of drugs in the trunk.

Upon receipt of this tip, the local police made arrangements with an agent of the Drug Enforcement Agency for surveillance. That surveillance revealed that Lance Gates was booked on a plane to Florida on May 5. Gates was followed to Florida where he went to a room registered to Susan Gates. In the morning, the couple left the motel in a car which had Illinois license plates registered to them. They drove the car northbound on the interstate highway frequently used by travelers going to Illinois.

On the basis of the above corroboration, the police obtained a search warrant. According to the *Gates* Court, "[t]he judge, in deciding to issue the warrant, could have determined that the *modus operandi* of the Gateses had been substantially corroborated." *Gates,* 462 U.S. at 226, 103 S.Ct. at 2326. The Court noted that "[e]ven standing alone, the facts obtained through the independent investigation of [the police] at least suggested that the Gateses were in-

volved in drug trafficking." [4] *Id.* at 243, 103 S.Ct. at 2335. In addition, the Court stated that while the honesty and reliability of the anonymous informant was unknown, "[t]he corroboration of the letter's predictions that the Gateses' car would be in Florida, that Lance Gates would fly to Florida the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true." *Id.* at 244, 103 S.Ct. at 2335. Finally, the *Gates* Court noted that:

> the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted. The letterwriter's accurate information as to the travel plans of each of the Gateses was of a character likely obtained only from the Gateses themselves.... If the informant had access to accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities.

*Id.* at 245, 103 S.Ct. at 2335–36 (footnote omitted).

When compared to *Gates,* the facts in the present case do not support a finding of probable cause. Unlike *Gates,* the information gathered by the police was not suggestive of illegal activity. The use of an unlisted telephone number is a frequent practice in the modern era for any number of legitimate reasons. Furthermore, as defendant states in his memorandum, a large telephone bill "indicates nothing more than a penchant for long-distance phone calls and/or that a person conducts a business enterprise from his home, a common occurrence in modern times." Moreover, there is no indication that the amount due in the

---

4. The *Gates* Court noted that the corroboration consisted of innocent activity; however, this seemingly innocent activity became suspicious in light of the tip. Thus, "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."

*Gates,* 462 U.S. at 243–44, n. 13, 103 S.Ct. at 2335, n. 13. In the present case, the corroboration of defendant's noncriminal acts did not create the same degree of suspicion as found in *Gates.* While it may not be insignificant, it needs further support for a finding of probable cause.

bill was the result of one month's service, or a carryover of past due amounts. While law-enforcement officers may use their expertise in translating activity that appears innocuous to the untrained mind into grounds establishing probable cause, *Laws*, 808 F.2d at 103 (footnote omitted), Tuttle's affidavit did not indicate that the verified facts were suggestive of criminal activity.

In addition, the corroborated facts do not establish the credibility of the informant. In *Gates* the Court discussed *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), where it was held that when the arresting officer "had personally verified every facet of the information given him by [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person ... [the officer] had 'reasonable grounds' to believe that the remaining unverified bit of ... information—that [defendant] would have the heroin with him—was likewise true." *Draper*, 358 U.S. at 313, 79 S.Ct. at 333. In the present case, while the affidavit attested to the informant's reliability, the veracity of the informant's tip was only tested through the corroboration of two facts.[5] Standing alone, these verified facts do not indicate that the informant had personal knowledge of defendant's gambling operation or that the informant's other representations were true. It cannot be said that this verification "reduced the chances of a reckless or prevaricating tale." *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). While these facts are not insubstantial, they need further support for a magistrate to conclude "that the informant's other assertions also were true." *Gates*, 462 U.S. at 244, 103 S.Ct. at 2335. *See Spinelli*, 393 U.S. at 414–18, 89 S.Ct. at 588–90 (corroboration of gambling opera-

tion's telephone number was insufficient for a finding of probable cause).

Finally, the details given by the informant were not of the same quality as in *Gates*. In *Gates*, the details related not only to facts at the time of the tip, but also to future actions of third parties. Here, the only future event referred to was that "collection day was Tuesdays." Affidavit of Miner Tuttle at ¶ E. However, this fact was not verified.

The third asserted deficiency is that the affidavit does not indicate when the informant made his observations. A finding of probable cause requires a determination that certain objects can currently be found at a particularly described place. 1 W. Ringel, *Searches & Seizures, Arrests and Confessions*, § 4.2(a) at 4–13 (1988). "[I]f the information is too old, it is considered stale and probable cause no longer exists." *United States v. Rakowski*, 714 F.Supp. 1324 at 1329 (D.Vt.1987) (Coffrin, C.J.) (citing *Sgro v. United States*, 287 U.S. 206, 210–12, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932)).

In the present case, the age of the tip could not be determined because the affiant neglected to indicate the date the informant observed the allegedly illegal activity. Without this information, the magistrate could not have determined whether the information was stale. As the court in *Rosencranz v. United States*, 356 F.2d 310, 316 (1st Cir.1966), points out, the informant's observations could have occurred "a day, a week, or months before the date of the affidavit." *See Rosencranz*, 356 F.2d at 316–17 (information was stale where affidavit contained neither the date of the informant's observation nor the date the information was given to the affiant); *United States v. Elliott*, 576 F.Supp. 1579, 1581 (S.D.Ohio 1984) (information stale

---

**5.** The investigating officers could have done more to verify the informant's tip. For instance, the informant stated that "collection day" was on Tuesdays. As the warrant was executed on a Monday, it would have been relatively easy for the officers to have postponed their warrant request for one day while establishing surveillance of the defendant's home. The observation of individuals entering defendant's home would have heightened the infor-

mant's reliability because it would have shown his ability to predict the future acts of third parties. *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335–36. In addition, the officer could have easily corroborated the informant's assertion that defendant made daily telephone calls to Florida by examining the telephone bill which the state police presumably had in their possession or knew of its whereabouts. Affidavit of Miner Tuttle at ¶ C.

where affiant neglected to include the date of the anonymous complaints or the dates of his surveillance); *Gonzales v. Texas*, 577 S.W.2d 226 (Tex.Cr.App.), *cert. denied*, 444 U.S. 853, 100 S.Ct. 109, 62 L.Ed.2d 71 (1979) (information stale where affidavit does not state when the officers received the information from their informer nor when the informer obtained his information).

The government argues that while the date of the informant's observation is absent, the freshness of the information can be inferred from an examination of the entire affidavit. More specifically, the government argues that the information was given to the affiant on January 20, 1984; however, in the affidavit the informant relates that the "Superbowl [sic] was just played on January 23, 1984...." Affidavit of Miner Tuttle at ¶ J. Thus, the government contends that the information from the informant was supplemented between January 20, and January 23. While the government's inference helps to determine the date of the "supplemented" information, it does not determine the date of the original observations. Moreover, the supplemented information only consisted of the informant's statement that he was "sure" bets were taken on the Super Bowl, but the affiant does not provide a basis for the informant's knowledge. In addition to the supplemented information, the government contends that the existence of the December telephone bill provides an inference as to the date of the information. However, as defendant points out, this information is at least one month old. Moreover, this information was acquired through police corroboration and does not fix the date of the informant's observations.

The government also contends that as the gambling operation was of an ongoing nature, the issue of staleness is less significant. Here, the information sought in the warrant was the records of defendant's gambling activity. According to the court in *United States v. McGrath*, 622 F.2d 36, 42 (2d Cir.1980), bookmaking records are "relatively permanent ... paraphernalia." When a search warrant is sought for such an ongoing enterprise, "the passage of time between the last described act and the application for the warrant becomes less significant." *United States v. Payden*, 613 F.Supp. 800, 814 n. 10 (S.D.N.Y.1985) (citations omitted). *See In re Search Warrant Dated July 4, 1977*, 667 F.2d 117 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982) (no staleness when documents were dated three months before the warrant was issued because of the elaborate ongoing conspiracy to collect stolen documents); *United States v. Williams*, 603 F.2d 1168 (5th Cir.1979), *cert denied*, 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980) (no staleness when informant gave his tip within six months because the affidavit described a continuing course of narcotics manufacture and distribution); *United States v. Matthews*, 572 F.2d 208, 209 (9th Cir.1978) (reasonable to expect documents and records to remain on the premises for at least a month).

While the ongoing nature of defendant's operation militates against a finding of staleness, the affidavit remains deficient because no starting point can be determined. Without such a reference point, the age of the information cannot be judged. The issuance of a warrant in this situation would allow "[o]fficers with information of questionable recency [to] escape embarrassment by simply omitting averments as to time...." *Rosencranz*, 356 F.2d at 316. Such a practice would remove magistrates from their "neutral and detached" function. *Aguilar*, 378 U.S. at 115, 84 S.Ct. at 1514 (citations omitted). As a result, we find that the warrant in the present case relies upon stale information.

The age of the information supporting a warrant is a factor that a magistrate should consider; however, if other factors indicate that the information is reliable then the magistrate should issue the warrant. *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir.1987) (citations omitted). In the present case, however, the reliability of the information is uncertain.

Only two factors point to the reliability of the informant's information. First, the

affidavit indicates the informant's personal knowledge of the gambling operation. The affidavit states that the informant knew the details of defendant's gambling operation and allegedly heard several telephone conversations concerning the betting. According to 1 W. Ringel, *Searches & Seizures, Arrests and Confessions,* § 4.3(a)(1) at 4–41 (1988), "when there is no independent corroboration of the information contained in the tip ... if knowledge is based on personal observation, it must be clear that the informant actually viewed the crime or the evidence of crime." In the present case, however, the affidavit does not provide details of the informant's knowledge which would substantiate his basis of knowledge. Rather, the affidavit's display of the informant's knowledge is limited to generalities. For example, the informant stated that the records of the gambling operation could be "found in the house." Affidavit of Miner Tuttle at ¶ H. However, the informant does not provide the affiant with a specific location. *See United States v. Diecidue,* 603 F.2d 535, 560 (5th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980) (reliability of informant was demonstrated by his knowledge of details concerning the location of counterfeit money in a secret door panel). In addition, the informant stated that he had heard some of the telephone calls relating to bets, but he provides no details as to time, place or content.

The second factor relating to the informant's reliability concerns the affiant's statement that he had given reliable information in the past. However, as in *Bruner,* 657 F.2d at 1296–97, such a statement, standing alone, will not be enough to establish reliability without corroboration from other sources. While these factors may be considered in establishing the informant's basis of knowledge and reliability, under the totality-of-the-circumstances analysis, these factors must be considered in light of other "indicia of reliability (or unreliability) attending the tip." *Massachusetts v. Upton,* 466 U.S. 727, 732, 104 S.Ct. 2085, 2087–88, 80 L.Ed.2d 721 (1984). As stated previously, the facts of the informant's story were not substantially corroborated, and the informant's observations were not dated. When these deficiencies are considered in light of the informant's lack of specific knowledge and the affiant's isolated statement that the informant had been reliable in the past, it becomes evident that the warrant was issued without probable cause.

### 2. *Good Faith Exception*

■ The government contends that even if the warrant was issued without probable cause, the search is valid under the "good faith" exception espoused in *United States v. Leon,* 468 U.S. 897, 918–21, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984). In that case the Supreme Court held that the exclusionary rule would not apply where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."[6] *Id.* at 920, 104 S.Ct. at 3419 (footnote omitted). The rationale behind this rule is that where an officer is objectively reasonable in relying on a search warrant, the exclusion of the evidence seized will have no deterrent effect on future police conduct. *Id.* The *Leon* Court provided, however, that the rule would not apply when the magistrate was given misleading information, when the magistrate wholly abandoned his judicial role, when the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and when the warrant fails to particularize the place to be searched or the things to be seized. *Id.* at 923, 104 S.Ct. at 3421 (citations omitted).

Defendant has countered the government's reliance on *Leon* by arguing that the warrant in the present case was issued upon an affidavit so lacking in probable cause as to render official belief in its existence entirely unreasonable.[7] Upon re-

---

**6.** The prosecution carries the burden of establishing the officer's good faith reliance on the warrant. *Leon,* 468 U.S. at 924, 104 S.Ct. at 3421; *United States v. Michaelian,* 803 F.2d 1042, 1048 (9th Cir.1986).

**7.** Defendant also argues that *Leon* is inapplicable because "[t]he judge ... acted as a rubber

viewing the affidavit in the present case, we find that while this is a close question, we agree with defendant's contention. The *Leon* Court's good faith inquiry is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. This objective standard "requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 919–20 n. 20, 104 S.Ct. at 3419 n. 20 (citing *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)). In the present case, we believe that a reasonably well trained officer would have known that more was needed to establish probable cause. First, the officer should have known that the affiant's declaration that the informant's information "has been reliable and substantiated by independent investigation in the past," will not establish the informant's reliability standing alone. Rather, the declaration that the informant was reliable needed to be verified "by some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. However, such indicia were lacking in this case.

Although the affidavit evidences two attempts at corroborating the informant's tip, the officer should have realized that this verification was insufficient. The corroboration consists of only two facts which fall short of identifying the *modus operandi* of the gambling operation. *See Id.* at 226, 103 S.Ct. at 2326. As stated previously in footnote 5, if the police had waited one day before seeking the warrant they could have established surveillance of defendant's "collection day." These observations would have enhanced the reliability of the informant because it would have shown the informant's ability to predict the "future actions of third parties." *Id.* at 245, 103 S.Ct. at 2335–36. However, the corroboration performed only established two facts which lacked the detail and thorough-

ness found in *Gates*. Without such detail, the officer could not be sure "that he [was] relying on something more substantial than a casual rumor circulating in the underworld...." *Id.* at 228, n. 3, 103 S.Ct. at 2327, n. 3 (quoting *Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589).

Finally, the officer should have known that the omission of the date of the informant's observations made it impossible to determine the age of the information. Without such information the officer could not determine whether "the proof ... of facts [was] closely related to the time of the issue of the warrant...." *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). Although the officer may have assumed that a finding of staleness was unlikely for such an ongoing crime, reliance on the affidavit could not have been reasonable because it provides no starting point for the measurement of time. As a result of these deficiencies, the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421 (citations omitted).

Despite this evident lack of probable cause, the government contends that the officer was in good faith because the officer obtained the approval of a deputy state's attorney and the issuing judge. More specifically, the government contends that "the presentment of the warrant application to a deputy state's attorney and the prosecutor's review is evidence that the officer held an objectively reasonable belief in the validity of the warrant."

■ Under *Leon*, the officer's good faith inquiry follows an objective test. *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. Ordinarily this inquiry "is based solely on [the] facts presented to the [issuing] magistrate." *United States v. Hove*, 848 F.2d 137, 140 (9th Cir.1988) (citation omitted). Nevertheless, we believe that de-

stamp for the police and thus failed to perform his neutral and detached function as a judicial officer." However, Magistrate Niedermeier determined that there was no evidence that the actions of the judge caused him to shed his

neutral role. *United States v. Turner*, No. 88–51, slip op. at 12 (D.Vt. Nov. 9, 1988) (Magistrate's Report and Recommendation). As neither party objected to this issue, we need not review the finding. 28 U.S.C. § 636(b)(1)(C).

pending on the circumstances, comments made by the issuing magistrate or prosecutor may have a bearing on the officer's good faith. *See Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23 (in determining objective reasonableness, "all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered."); *Massachusetts v. Sheppard,* 468 U.S. 981, 989 n. 6, 104 S.Ct. 3424, 3428 n. 6, 82 L.Ed.2d 737 (1984) (it is not unreasonable for the police to rely on the judge's assurances that the warrant was valid). Therefore, we permitted the government to submit a proffer regarding any comments that may have been made by the reviewing prosecutor or the issuing judge.

Initially we note that our focus here is not whether the judge merely approved the warrant application. Rather, our focus is whether the comments or acts of the judge caused the officer to objectively believe that the warrant was valid. If the officer's good faith could be established by the mere fact that the judge approved the warrant application, then the *Leon* good faith exception would swallow the rule that an officer does not "manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted).

According to the government's proffer, prior to presenting the application for a search warrant to the issuing judge, Officer Tuttle asked Chittenden County State's Attorney, Kevin Bradley, to review the affidavit. At that time, Bradley asked Tuttle whether there existed additional information which could bolster the credibility and reliability of the informant. Tuttle responded that while additional information

existed, he was concerned that the inclusion of those facts might jeopardize another investigation being conducted by the Vermont State Police.[8] In response to this explanation, Bradley stated that the affidavit "had merit as it stood." Before presentment to the issuing judge, the affidavit was also reviewed by Deputy State's Attorney, John Churchill. According to the government, Churchill read the affidavit and informed Tuttle that it was satisfactory. The government makes no representation regarding any comments made by the issuing judge.

The government argues that as Bradley and Churchill told Tuttle that the affidavit was sufficient, Tuttle's reliance on the warrant was objectively reasonable. In support of this argument, the government cites *United States v. Fama,* 758 F.2d 834 (2d Cir.1985) and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed. 2d 737 (1984). However, we believe that the facts of this case are distinguishable from *Sheppard* and *Fama.*

In *Sheppard,* a police officer presented an affidavit and warrant form to a judge. Although the affidavit established probable cause, the warrant form was defective in that it did not particularly describe the items to be seized. In applying the *Leon* test, the Supreme Court held that the officer was objectively reasonable in relying on the warrant because the issuing judge had made corrections to the warrant application and upon doing so informed the officer that the warrant was "sufficient authority in form and content to carry out the search requested." *Id.* at 986 n. 3, 104 S.Ct. at 3427 n. 3.

In the present case, however, there is no evidence that the issuing judge either corrected the warrant application or made

---

**8.** Although this "additional" information bolstered Tuttle's belief in the existence of probable cause, it is not relevant under *Leon.* According to the *Leon* Court:

[a]lthough we have suggested that "[o]n occasion the motive with which the officer conducts an illegal search may have some relevance in determining the propriety of applying the exclusionary rule," ... we believe that

"sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources."

*Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23 (citations omitted). As the *Leon* test does not focus on the officer's motive, we will not consider any additional knowledge the officer had beyond the face of the affidavit.

specific comments to Tuttle. Rather, the government's proffer only indicates that "Tuttle did not receive any negative information concerning the warrant from Judge Cashman." However, we do not believe that the issuing judge's silence can be construed as establishing the officer's good faith reliance on a plainly deficient warrant.

In *Fama,* the district court found that the warrant was so lacking in information that official belief in the existence of probable cause, even given the issuance of the warrant, would be wholly unreasonable. *Fama,* 758 F.2d at 836. On appeal, the Second Circuit determined that the police officer satisfied the good faith standard. According to the court:

> [b]efore applying for any warrants, Agent Garcia sought the expertise of an [Assistant United States Attorney] AUSA. The AUSA drafted the affidavit based on Agent Garcia's information. Judge Cannella carefully reviewed the affidavit and found probable cause to arrest appellee.... The expertise of the AUSA, Judge Cannella's findings and Judge Costantino's issuance of the warrant were factors which supported an objectively reasonable belief in probable cause to search appellee's home.

*Id.* at 837.

Unlike *Fama,* the affidavit in the present case was not prepared by the prosecutor. Rather, the affidavit was prepared by Tuttle. In addition, while the issuing judge in *Fama* "carefully reviewed the affidavit," *id.* at 837, and "requested additional information on four of the named suspects," *id.* at 835, there is no evidence in the present case that the issuing judge made such inquiries or "carefully reviewed the affidavit."

Moreover, the *Fama* court indicated that the preparation of the affidavit by the AUSA and the judges' review were "*factors* which supported an objectively reasonable belief in probable cause." *Id.* at 837 (emphasis added). As any error as to the validity of the warrant was "attributable to the issuing judge," *id.* at 838, the court held that the officer was in good

faith. In this case, however, the affidavit contained insufficient evidence to establish probable cause. This error was at least partially attributable to Tuttle. When Tuttle sought the assistance of Bradley, he was asked whether more information was available to bolster the credibility and reliability of the informant. This inquiry put Tuttle on notice that Bradley had reservations regarding the sufficiency of the affidavit. Although Tuttle possessed additional information, he purposefully withheld this information to preserve the vitality of another ongoing investigation.

While the subsequent affirmation of the affidavit by Bradley and Churchill are "factors" to consider, we do not believe that they tip the scales in favor of a finding of objective reasonableness. Under *Leon,* the objective test "requires officers to have a reasonable knowledge of what the law prohibits." *Leon,* 468 U.S. at 919–20 n. 20, 104 S.Ct. at 3419 n. 20 (citation omitted). As stated previously, a reasonably well trained officer should have known that the affidavit in this case was deficient. Although Bradley ultimately approved the affidavit, the government's proffer indicates that he had reservations. Moreover, it cannot be determined whether Bradley's subsequent approval was based on his review of the affidavit, or on the other information that Tuttle wished to exclude. Furthermore, although Churchill also approved the affidavit, we believe that Tuttle's knowledge that the affidavit needed more information regarding the informant's credibility and reliability prevented him from forming an objectively reasonable belief that the affidavit was valid. Therefore, we do not believe that the approval of the affidavit by Churchill and Bradley establishes the officer's objective good faith.

Finally, we note that suppression in this case is in accordance with the deterrent function of the exclusionary rule. Ordinarily, where an officer relies in good faith on the magistrate's probable cause determination, any error will be attributable to the magistrate. In such situations, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically con-

tribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 104 S.Ct. at 3419 (footnote omitted). Rather, "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374 (1975) (quoting *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974)).

In the present case, it appears that Tuttle was aware of the fact that more information was needed to establish the credibility and the reliability of the informant. Although Tuttle possessed such information, he chose to withhold it in order to protect another ongoing investigation. While we approve of the officer's desire to protect the individuals involved in the other investigation, we do not believe that the existence of the investigation should be used to penalize defendant. Rather, in such situations, more information may be required to establish probable cause. As stated previously, the affidavit in this case could have been bolstered by other corroborative techniques. These techniques were not overly burdensome. As such, we believe that suppression is in accordance with the deterrent function of the exclusionary rule.

### CONCLUSION

In light of the foregoing, we find that the warrant was so lacking in probable cause as to fail to meet the good faith exception. Accordingly, defendant's motion to suppress is GRANTED.

This case is scheduled for trial on Monday, May 8, 1989, at 9:30 a.m., before the Honorable Franklin S. Billings, Jr., Chief Judge.