**UNITED STATES of America, Appellant,**

v.

**Terry Jon MARTIN, Appellee.**

**No. 86–5490.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 2, 1987.

Decided Nov. 24, 1987.

---

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, Minn., for appellant.

Craig Cascarano, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The United States appeals from an order of the district court[1] suppressing firearms seized during a search of an automobile owned by Terry Jon Martin in this case involving unlawful possession of firearms. 18 U.S.C. § 1202(a) Appendix (1982 and Supp.1985). For the reasons stated below we reverse.

## I. BACKGROUND

On February 24, 1986, Martin was indicted in federal court on a firearms possession charge. The primary evidence against Martin consists of firearms seized from Martin's 1979 Mercury automobile pursuant to a state search warrant. The warrant was one of five issued in culmination of a state undercover investigation involving stolen furs. A brief summary of that investigation follows.

On October 6, 1985, fifty-two fur coats were stolen from Cedric's Clothing Store in Edina, Minnesota. On January 3, 1986, Hennepin County Sheriff's Detective Walter Powers, acting undercover as a businessman, met with Norman Mastrian in a Minneapolis parking lot to discuss purchasing several of the coats. On January 6, Powers made his first purchase at 4832 28th Avenue South in Minneapolis. Earlier that day surveillance officers observed Mastrian and Martin leaving Mastrian's residence at 1615 Northeast Third Street in Minneapolis and driving to the 28th Avenue address. Martin was observed removing a large tan duffel bag from the trunk of his Mercury, bringing it into the building, and returning it to the car a few minutes later.

---

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

Powers purchased a second fur coat from Mastrian on January 30, 1986 at 719 Marshall Street Northeast in Minneapolis. Powers observed Mastrian unloading several coats from a large tan duffel bag and after buying one of the coats Powers helped reload the remainder back into the duffel bag. None of the coats retained their original price tags or labels—generic tags were substituted to make identification difficult.

On February 15, 1986, Powers and Mastrian again met and agreed to trade fur coats for cocaine. Powers met with Mastrian and Martin on February 18 to consummate the deal and arrested both of them. Later that day Martin's automobile was searched and two firearms were found. The automobile was located at Mastrian's residence, while the arrests occurred in the nearby town of Golden Valley, Minnesota.

After the arrests, Detective Powers submitted to a state court judge an affidavit in support of five separate search warrants. The items sought from Martin's automobile were "[p]rice tags, handwritten notes and lists pertaining to the stolen coats, minute fur residue from the coats, identifying labels including Cedric's of Edina, [and] items to show constructive possession of the above property."

Powers' affidavit is two-and-one-half typed pages long. The references to Martin are as follows:

1) Martin was seen loading a tan duffel bag into his car on January 6, 1986, at Mastrian's residence;

2) Powers saw the same bag on January 30 while purchasing a coat at 719 Marshall Street Northeast;

3) Martin was seen on numerous occasions coming from and going to the Marshall Street address.

4) While telephoning Mastrian at the number he had provided, Powers spoke with a man who identified himself as Terry.

The state court judge issued the warrants and firearms were found in the trunk of Martin's car. At his trial on federal firearms charges Martin moved to have the guns suppressed on the grounds that the affidavit did not set forth probable cause to believe that the car contained contraband.

A magistrate [2] recommended that the guns be suppressed and upon objection by the United States, the district court issued an order suppressing the firearms based on the magistrate's report and recommendation. On November 26, 1986, the district court issued an order staying trial to permit the United States to bring this interlocutory appeal.

## II. DISCUSSION

On appeal the United States argues first, that the district court erred in holding that Powers' affidavit is insufficient, and second, that assuming the affidavit is insufficient, the good faith exception to the exclusionary rule should apply and make suppression unnecessary.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the two-pronged test for determining whether there exists probable cause. The Court stated that the role of the issuing magistrate is to determine whether given all the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332. The task of the reviewing court, in this case the district court, simply is to "ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). The district court's determination that the Powers' affidavit is insufficient will not be overturned by this court unless it is clearly erroneous. *United States v. Henry*, 763 F.2d 329, 331 (8th Cir.1985).

In the present case Powers' affidavit was marginal in directly connecting Martin with any criminal enterprise. The United States argues, however, that from the information

**2.** The Honorable J. Earl Cudd, United States Magistrate for the District of Minnesota.

about Martin contained in the affidavit we may infer that Mastrian and Martin were in the business of selling stolen fur coats and that they frequently moved them by car from one location to another. We also may infer that Martin's car was used on many occasions between January 6 and February 18, 1986, and that tags, labels, and minute bits of fur would still be in the trunk on February 18, despite the time lag from January 6 to the 18th of February.

■ The district court held that Powers' affidavit may support an educated guess, but not probable cause. Although we believe that the sighting of a tan duffel bag at the Marshall Street address on January 30, 1986, may establish a fair probability that the duffel bag contained stolen furs on January 6, we can not say with assurance that the decision of the district court is clearly erroneous. Consequently, the portion of the district court's order declaring the warrant invalid is affirmed. However, any violations of Fourth Amendment requirements in either the affidavit or the magistrate's issuance of the warrant were neither deliberate, predicated on false statements, nor such as to constitute official misconduct.

The United States next argues that assuming the affidavit is insufficient, the warrant was executed in good faith, and consequently, the firearms need not be suppressed. The district court disagreed, holding that the affidavit was so lacking in facts necessary to establish probable cause that a reasonably well trained police officer would have known that the warrant was invalid.

The good faith exception to the exclusionary rule was announced by the Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon* the Court recognized that in certain instances the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence. When a police officer acts in an objectively reasonable manner in reliance on a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the

search. However, under certain limited circumstances suppression remains the appropriate remedy. For example, if the magistrate who issued the warrant "wholly abandoned his judicial role," then an officer's reliance on the warrant would be unreasonable. *Id.* at 923, 104 S.Ct. at 3421. Likewise, if the issuing magistrate was misled by the affiant, then suppression is appropriate. *Id.* Further, if the warrant is facially deficient—i.e., it fails to state with particularity the place to be searched or the thing to be seized—then it can not reasonably be relied upon. *Id.* The final situation in which suppression is appropriate is at issue in this case because Martin argues that Powers' affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)). We disagree.

■ Powers' affidavit is not clearly insufficient. It details an undercover investigation lasting over six weeks during which Martin was seen on several occasions driving his Mercury automobile. It states that undercover police officers observed Martin placing a tan duffel bag into the trunk of the Mercury just before Powers purchased a stolen coat from Mastrian. Approximately three weeks later the same tan duffel bag was seen during a second buy at the Marshall Street address. Whether these facts establish probable cause to believe that price tags, labels, bits of fur, etc., would be found in Martin's car is a close question.

■ Although a police officer may not rely entirely on the magistrate's finding of probable cause, *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986), in cases where, as here, the courts can not agree on whether the affidavit is sufficient, it would be unfair to characterize the conduct of the executing officers as bad faith, particularly where there has been no material false statements or misrepresentations in the affidavit and where the officer is acting in good faith. Although we may not look to facts outside of

the affidavit to determine probable cause, *Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n.8, 28 L.Ed.2d 306 (1971), when assessing good faith we can and must look to the totality of the circumstances including what Officer Powers knew but did not include in his affidavit. *See Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). As noted in *Anderson,* "the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials."

In the present case a state court judge found that Powers' affidavit established probable cause to believe that Martin's car contained evidence of criminal activity. A United States magistrate found to the contrary and the district court agreed. On appeal, a panel of this court, bound by the clearly erroneous standard of review, now affirms the finding of the district court on the invalidity of the warrant. Were we allowed to exercise de novo review, however, this issue would be much more difficult. When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable. This is not to say that whenever a warrant is issued a police officer's reliance will be reasonable. As the Supreme Court stated in *Malley v. Briggs,* 106 S.Ct. at 1099, police officers must exercise "reasonable professional judgment". However, where the issue is a close one no purpose will be served by suppressing the illegally seized evidence. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon,* 468 U.S. at 921, 104 S.Ct. at 3419.

The facts in this case closely resemble those in *United States v. Fama,* 758 F.2d 834 (2d Cir.1985), wherein the court applied the good faith exception and reversed the order of the district court suppressing illegally seized evidence of drug trafficking. After reviewing the facts the court con-

cluded that any error must be attributed to the issuing magistrate rather than the investigating officers. "The affidavit 'provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the [judge's] determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.' " *Id.* at 838 (quoting *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422).

## III. CONCLUSION

Because we find that the officers who searched Martin's automobile objectively relied in good faith on the search warrant, the order of the district court suppressing the fruits of the search is reversed.

LAY, Chief Judge, concurring.

I agree with the result the majority reaches, but write separately for two reasons. First, I cannot agree with the majority's application of the principle announced in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The *Malley* Court emphasized that a police officer cannot simply rely on the magistrate's issuance of a warrant to demonstrate his objective good faith. *Id.* at 1098–99. The magistrate's issuance of the warrant is irrelevant to the question of the officer's good faith; the "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon,* 468 U.S. 897, 922 n.23, 104 S.Ct. 3405, 3420 n. 23, 82 L.Ed.2d 677 (1984).

I therefore believe that the majority errs by attaching such great weight to the fact that "a state court judge found that Powers' affidavit established probable cause * * *." Maj. op. at 756. I believe that the majority then strays even further from the principle of *Malley* by reasoning that: 1) the federal court's disagreement with the state court judge demonstrates that the validity of the warrant was a close ques-

tion; and 2) therefore, Powers' reliance on the issuance of the warrant must have been reasonable. The effective result of this reasoning is exactly what the *Malley* Court proscribed: the finding of objective good faith by the police officer whenever a magistrate issues a warrant.[1]

I write separately for a second reason. I believe, as did both the magistrate and the district judge, that the face of the affidavit at issue here is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

The bare bones affidavit contains one isolated reference to Martin's vehicle, involving an observation Powers made some six weeks before. This singular observation standing alone is too remote and speculative to justify a search of Martin's vehicle. I thus must reach the question that the majority mentions but need not resolve: whether, in making the objective good faith determination, this court may look to facts known by Powers but not included in the affidavit.[2]

It is well-established that courts may *not* look to facts outside the affidavit in determining the existence of *probable cause.* *See, e.g., Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 1035 n. 8, 28 L.Ed.2d 306 (1971). However, whether a police officer acted in objective good faith is a separate and distinct question. *Cf. Anderson v. Creighton,* —— U.S. ——, 107

S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Deciding whether an officer acted in good faith requires an examination of the totality of circumstances beyond the four corners of the affidavit. *Cf. Leon,* 468 U.S. at 922–23 n. 23, 104 S.Ct. at 3420 n. 23. Moreover, when assessing the good faith of an officer who conducted a warrantless search, the Court has stated that the inquiry must be fact-specific, taking into account all the information known by the officer. *See Anderson,* 107 S.Ct. at 3040. Contrary to the appellee's argument, this does not substitute a subjective test for an objective one. This inquiry must be addressed to the objective reasonableness of the belief of an officer in Powers' position —meaning an officer with knowledge of the facts that Powers possessed.

Here, Detective Powers had conducted a six-week investigation uncovering numerous facts connecting Martin's car to the stolen furs. The facts known to him but omitted from the affidavit clearly were sufficient to justify a reasonable belief that probable cause existed.[3] On this basis, I concur in the majority's judgment that the district court's decision must be reversed.

---

**1.** Nowhere is this more apparent than when the majority states: "When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable." (At 756). A federal court that finds an affidavit insufficient to establish probable cause will *always* disagree with the issuing judge, who presumably found the affidavit sufficient. Thus, in *every* case in which a warrant is issued, later to be invalidated, there is disagreement between judges; under the majority's reasoning, there thus is also objective good faith in every such case.

**2.** The majority states that it "must look to the totality of the circumstances including what Officer Powers knew but did not include in his

affidavit." (Maj. op. at 756). The majority need not look to these circumstances, however, because it finds that the affidavit was *not* so lacking in indicia of probable cause as to render Powers' belief in it unreasonable—a conclusion with which I disagree.

**3.** Martin argues that the relevant information recited in Powers' affidavit—the January 6 sighting of Martin and his 1979 Mercury—was "stale" because it occurred six weeks prior to execution of the warrant. This argument is well-taken. Nevertheless, the facts known to Powers but omitted from the affidavit were gathered during that six-week period and were sufficiently connected in time to the date of the warrant and its execution.