Charles SIMS *v.* STATE of Arkansas

CR 97-1350                                    969 S.W.2d 657

Supreme Court of Arkansas
Opinion delivered June 4, 1998
[Petition for rehearing denied July 9, 1998.]

*Larry Killough, Jr., P.A.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Sr. Asst. Att'y Gen. and *James Gowen*, Law Student Admitted to Practice Pursuant to Rule XV(E)(1)(b) of the Rules Governing Admission to the Bar of the Arkansas Supreme Court, for appellee.

TOM GLAZE, Justice. Appellant Charles Sims brings this appeal and raises one point for reversal. After a mistrial and prior to a second trial, Sims entered a conditional plea of guilty under Ark. R. Crim. P. 24.3(b). In doing so, he reserved the right to challenge on appeal the trial court's ruling denying his motion to suppress an ounce of crystal methamphetamine found as a result of a search of his residence.

The search of Sim's house was actually initiated as a result of information provided by California authorities who had intercepted a Federal Express package addressed to Chuck Samms[1] at 21 McArthur Street, Cabot, Arkansas. The California officers notified Arkansas State Police Officer Steve Clemmons of their discovery, and forwarded the package to Clemmons, who arranged for its controlled delivery to the 21 McArthur address.

---

[1] While the name *Samms* appeared on the package, the address was indisputably Chuck Sims's.

As a part in planning the controlled delivery, Officer Clemmons prepared an affidavit for a search warrant and presented it to Municipal Judge Joe O'Bryan. In the affidavit, Clemmons described the information concerning the package he had received from California authorities, but he further inaccurately averred, "The package was delivered to Chuck Sims, the owner of the vehicles parked in the driveway at 21 McArthur, Cabot, Arkansas." In fact, the package had not yet been delivered to Sims's residence, which Judge O'Bryan knew, since the package containing the illegal substance was on his desk when he reviewed the paperwork Clemmons had submitted for the search warrant. In addition, this error was perpetuated in the printed boiler-plate form of the search warrant issued by Judge O'Bryan wherein the warrant reflected, "I (Officer Clemmons) am satisfied that there is probable cause to believe that the property so described is being concealed on or in the (Sims's) premises." Parts of the form were appropriately stricken, but Clemmons failed to delete this "being concealed" statement in the form so as to conform to an anticipatory search.

After issuance of the warrant, Clemmons arranged for the delivery of the package to Sims's house. Sims was not home when the delivery was made, but the package was accepted by Douglas Boyer, Sims's brother-in-law. Within minutes after the delivery, Boyer left Sims's house, and officers stopped him, but found no controlled substances on his person or in his vehicle. The officers then searched Sims's house and found the Federal Express package, containing the methamphetamine, in a microwave oven. When Sims came home about two hours later, the officers arrested him, and he was charged with the unlawful possession with intent to deliver methamphetamine.

In his challenge of the officers' search, Sims points out that, while officers were seeking to obtain and execute an anticipatory search warrant conditioned on a future controlled delivery of the package to Sims, Officer Clemmons's affidavit falsely reflected that the package and illegal substance had already been delivered to Sims who had concealed it in his house. In short, Sims argues that, because Clemmons's statements were untrue and no illegal substance had yet been delivered to Sims's house, no accurate

showing of probable cause was shown to exist upon which Judge O'Bryan could issue a warrant.

In making his argument, Sims recognizes that courts have upheld the validity of anticipatory warrants, and while our court has not been confronted with the issue, the Eighth Circuit Court of Appeals, as well as other circuit courts, has upheld such practice. *See U. S. v. Bieri*, 21 F.3d 811 (8th Cir. 1994); *U. S. v. Tagbering*, 985 F.2d 946 (8th Cir. 1993) [citing *Rivera v. United States*, 928 F.2d 592 (2d Cir. 1991); *United States v. Dornhofer*, 859 F.2d 1195 (4th Cir. 1988); *United States v. Wylie*, 919 F.2d 969 (5th Cir. 1990); *United States v. Lowe*, 575 F.2d 1193 (6th Cir.), *cert. denied*, 439 U.S. 869 (1978); *United States v. Odland*, 502 F.2d 148 (7th Cir.), *cert. denied*, 419 U.S. 1088 (1974); *United States v. Hale*, 784 F.2d 1465 (9th Cir.), *cert. denied*, 479 U.S. 829 (1986)]. In *Bieri*, the court held that an anticipatory search warrant should be upheld if the independent evidence shows the delivery of contraband will or is likely to occur and the warrant is conditioned on that delivery. Sims states that, unlike in *Bieri*, the statements given by the officer here to the issuing judge were unreliable and insufficient to support the issuance of a warrant.

Sims also mentions the Eighth Circuit's *Tagbering* case in an attempt to distinguish it from the facts here. In *Tagbering*, the U. S. Customs Officials in Miami, Florida intercepted a package addresed to Kim Smart, ᶜ/ₒ Gary Tagbering, 10557 Cypress, Apt. D, Kansas City, Missouri. The customs officials forwarded the package to the Missouri authorities, and a Kansas City detective prepared a search-warrant form and an accompanying affidavit to present to a judge for issuance of an anticipatory warrant. The detective's affidavit provided the government's plans for a controlled delivery of the package and stated that "the warrant would not be executed unless the delivery occurs and the package is accepted." The judge issued the search warrant and recited, "[T]here is probable cause to believe the package will be delivered through a controlled delivery." The controlled delivery was made as planned, and Tagbering accepted the package. He was subsequently arrested, and, pursuant to the warrant, his apartment was searched and the package and contraband were seized.

In challenging the validity of the government's warrant, Tagbering contended the warrant was invalid because it did not expressly condition the search upon a controlled delivery, nor did the warrant reflect it would be void if the delivery did not occur. The Eighth Circuit held that the warrant, fairly construed, did condition the search because the detective's affidavit contained the representation to the issuing judge that the warrant would not be executed until the package was delivered and accepted. The *Tagbering* court did say that, if the warrant was executed before the controlled delivery occurred, suppression may well be warranted. *Id.* at 950. Sims distinguishes his situation from Tagbering's because here no conditional language appeared in either Officer Clemmons's affidavit or warrant. Sims claims that, without the limiting language in the warrant, it was left solely to the officers' discretion as to when and how the warrant would be executed.

■ Unquestionably, the affidavit and search warrant presented to Judge O'Bryan contained untrue statements since no delivery had been made at the time Officer Clemmons requested a warrant from the judge. Obviously, if probable cause and the issuance of a warrant were dependent on information showing that contraband had previously been delivered to Sims's residence, the judge's issuance of the warrant and the execution of the warrant were invalid. However, even if the warrant is defective, as argued by Sims, we conclude the contraband evidence was still admissible because the officers executing the warrant did so in good faith. *See U.S. v. Leon*, 468 U.S. 897 (1984); *see also U.S. v. Livesay*, 983 F.2d 135 (8th Cir. 1993) (court held it is well settled that, in the absence of unusual circumstances, evidence seized pursuant to a search warrant that is subsequently invalidated is still admissible).

■ ■ In *Leon*, the Court held that the Fourth Amendment exclusionary rule should not be applied so as to bar the use of the prosecution's case-in-chief evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be invalid. The Court further concluded that suppression remains an appropriate remedy if the magistrate or *judge* in issuing a warrant *was misled* by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disre-

gard of the truth.[2] (Emphasis added.) *Id.* at 923; *see also Franks v. Delaware*, 438 U.S. 154 (1978). Although we may not look to facts outside of an affidavit to determine probable cause, when assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit. *U.S. v. Martin*, 833 F.2d 752 (8th Cir. 1987).

Sims's only response to the State's reliance on the good-faith exception in *Leon* is that Clemmons could not have relied in good faith on the warrant, given his own misguided participation in the warrant process. Such comment fails to address or resolve the good-faith issue before us.

Here, as previously discussed, Officer Clemmons furnished the issuing judge misinformation, but the evidence and circumstances fail to show that he intended to mislead the judge or to execute the warrant differently from the manner he represented to the judge. Sims does not question the authenticity or reliability of the information related to Officer Clemmons by the California authorities. And while Officer Clemmons misspoke in his affidavit to the judge that "the package (had been) delivered to Chuck Sims," the judge was not misled by this misstatement, because the judge saw the package on his desk when he was reviewing the paperwork before signing the warrant. In addition, the officer told the judge that the package had not yet been delivered, but the judge approved the warrant based on the officer having stated that the package would be delivered.

In sum, even though the State's warrant was not a valid anticipatory warrant, we hold the officers requesting and executing the warrant objectively and reasonably relied on the judge's probable cause determination, especially since they knew the judge was aware that the package containing the contraband would be delivered and that the warrant would not be executed

---

[2] Other instances when evidence obtained under a search warrant may be suppressed include when an officer's reliance on the magistrate's probable cause determination was unreasonable, judged by an objective standard, and when the magistrate who issued the warrant departed from a neutral stance. *U.S. v. Livesay*, 983 F.2d 135 (8th Cir. 1993).

until delivery was accepted. Therefore, we affirm the trial court's denial of Sims's suppression motion.

NEWBERN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. The majority's description of Officer Clemmons's affidavit as inaccurate is, at best, a misnomer. Officer Clemmons knowingly averred in his affidavit that the package had already been delivered and had been received by Charles Sims, when such was not the case. No package had been delivered to Sims at the time the warrant was sought, nor was the package finally delivered to Sims. The package was not delivered until after the warrant was obtained and delivery was made to Sims's brother-in-law, Douglas Boyer. The majority candidly recognizes the error in the affidavit and the subsequent warrant and further recognizes that the warrant was invalid. However, they justify the validity of the search on the basis of the good-faith exception to the exclusionary rule.

I cannot subscribe to the course of action taken by the majority. The majority's reliance on the good-faith rule of *United States v. Leon*, 468 U.S. 897 (1984), is misplaced. We have had an opportunity to apply the *Leon* good-faith exception in *Pyle v. State*, 314 Ark. 165 (1993), and we stated that every fact in an affidavit need not necessarily be correct, but " 'must be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true.' " *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). It is not suggested, nor could it be maintained that Clemmons's affidavit was truthful, or that he believed his affidavit to be accurate. Officer Clemmons admitted during the suppression hearing that he was aware his affidavit misrepresented the true state of affairs.

The majority responds by relying on suppression hearing testimony of Officer Clemmons and Judge O'Bryan that they knew the affidavit and warrant were false, but they also knew that no search would take place until after delivery. This, the majority holds, demonstrates that there was good faith. Such an outcome defies logic. The affidavit and the warrant were both false.

Officer Clemmons knew they were false and the magistrate knew they were false. The majority, however, posits that we may look to information outside the affidavit to determine good faith, citing for support *United States v. Martin*, 833 F.2d 752 (8th Cir. 1987).

*Martin* and *Leon* do little to support the majority's holding. In *Leon*, officers had served a search warrant on the good-faith belief that it was validly issued by the magistrate, but the affidavit establishing probable cause was insufficient. In *Martin*, the court was also faced with an insufficient affidavit. Nowhere in the *Martin* or *Leon* opinions is it suggested that the affidavits in question were false. Moreover, the court in *Martin* noted that the sufficiency of the affidavit in that case was a close question on which courts could disagree. Therefore, the court stressed that "[a]lthough we may not look to facts outside of the affidavit to determine probable cause, when assessing good faith we can and must look to the totality of the circumstances including what [an] officer . . . knew but did not include in his affidavit." *Martin, supra* (citations omitted).

The majority unwisely extends the *Martin* holding to allow a court to go beyond an affidavit not merely to supplement an insufficient affidavit with "what [an] officer . . . knew but did not include in his affidavit," but also to replace a false affidavit and an invalid warrant with unsworn testimony. The *Martin* court correctly notes that an examination of information outside the affidavit is warranted to determine good faith "where there [have] been no material false statements or misrepresentations in the affidavit." That is exactly what occurred in this case.

We have long held that an affidavit must be supported by sworn testimony. *Herrington v. State*, 287 Ark. 228, 697 S.W.2d 899 (1985); *Baxter v. State*, 262 Ark. 303, 556 S.W.2d 428 (1977); *Lunsford v. State*, 262 Ark. 1, 552 S.W.2d 646 (1977). Moreover, our Rules of Criminal Procedure specifically state that the application for a search warrant "*shall* be supported by one (1) or more affidavits or *recorded testimony under oath* before a judicial officer . . . ." Ark. R. Crim. P. 13.1(b) (emphasis added). The majority's holding relegates this sworn-testimony requirement to a posi-

tion of insignificance. Under the majority's approach, an officer may knowingly present a false affidavit and obtain an invalid warrant, but so long as he tells the magistrate what will actually take place he has acted in good faith when the warrant is eventually executed. Such an outcome is illogical, unwise, and contrary to the law.

Furthermore, *Martin* states that under certain circumstances suppression remains the appropriate remedy where the warrant and affidavit are so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Martin, supra.* There can be good faith only where an officer has reasonably relied upon a magistrate's determination of probable cause. *State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997); *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991).

The only information on which the probable-cause determination could be made in this case is the unsworn testimony of Officer Clemmons. In attempting to find good faith, the majority's holding in essence allows a court to look outside a false affidavit and establish an entirely independent basis on which to hinge probable cause for a warrant that is "so lacking in any indicia of probable cause that it was rendered invalid." *Martin, supra.*

For the above reasons, I must respectfully dissent.

NEWBERN, J., joins in this dissent.