Rico HAMPTON *v.* STATE of Arkansas

CA CR 03-801                                                    204 S.W.3d 572

Court of Appeals of Arkansas
Opinion delivered March 2, 2005

*Christopher W. Hays*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, appellant Rico Hampton entered a conditional guilty plea to two counts of possession of a controlled substance with intent to deliver. He was sentenced to a cumulative term of sixty months in prison, with an additional sixty months suspended. On appeal, Hampton contends that the trial court erred in denying his motion to suppress evidence of narcotics found in his home. For the reasons stated below, we affirm.

The facts of this case are undisputed. During the early morning hours of March 5, 2003, Hampton was a passenger in a vehicle that was stopped by Bradley County Deputy Sheriff Mark Spencer in a remote area just outside of Warren, Arkansas. When Officer Spencer's canine indicated that drugs might be present in the vehicle, Spencer radioed ahead to city officers and ordered the driver to continue into town while Spencer followed. In town, the canine again indicated the presence of drugs inside the car. During

a search of the vehicle and its occupants, police discovered drugs in the back seat near Hampton. They also found in Hampton's possession a weapon and $1241 in cash. No drugs were found in Hampton's possession. Hampton was arrested.

Officer Spencer then prepared an affidavit for a warrant to search Hampton's residence. The affidavit stated in part as follows:

> Rico Hampton, Luchunnia Braggs, Chudney Haywood, and Chenetta Simmons were inside the vehicle. The vehicle was traveling North on US 63 South at 45mph in a 55[mph] zone. The vehicle crossed the center line 6 times and was stopped on 63 South at the Hermitage city limits. The driver Luchunnia Braggs had bloodshot watery eyes and I smelled the odor of Marijuana in the vehicle. I then had my K9 KIA check the outside of the vehicle. KIA gave a [positive] indication on the vehicle. Because of the area I was in and having 4 people in the vehicle I didn't search the vehicle at that time. I then followed the vehicle to Warren and had Sgt. Jones and Officer White of the Warren police dept. meet us at CASH'S 2 on the 278 bypass. I then had KIA check the vehicle again and she indicated that there were drugs in the vehicle. I removed Rico Hampton from the rear [driver's] side and searched him. Rico Hampton had 1241.00 dollars US [currency] and a loaded [.22 caliber] Davis Industries [derringer] that was loaded in his [possession]. I then removed all the other occupants and searched the inside of the vehicle. I found Marijuana inside the vehicle on the rear [passenger's] side. All occupants were taken to the Jail and then searched. Chenneta Simmons had a bag of green leafy substance in her sock. Rico Hampton admitted to being under the influence of marijuana and he was charged with [simultaneous possession] of drugs and a firearm. . . . Based on the amount of money Rico Hampton had in his [possession] and having no job along with numerous [arrests] for Controlled Substance and theft by receiving we are requesting a search warrant. . . . Rico Hampton resides at 408½ Burch St. Hermitage AR.

Bradley County Circuit Judge Robert C. Vittitow issued the requested warrant, and police found a large amount of narcotics during a search of Hampton's home. Hampton subsequently filed a motion to suppress evidence seized during the search.

During a hearing on the motion to suppress, Officer Spencer testified that, at the time of Hampton's arrest, he was aware that Hampton was unemployed and had previous drug arrests. Spencer

also said that, based on this information and other information that he received from officers in the Hermitage Police Department and "ongoing surveillance," he believed that Hampton was dealing narcotics and thus obtained a warrant to search Hampton's residence. Furthermore, Spencer testified that he "had been told in the past that there would be drugs in Mr. Hampton's house," but that he did not include this in his affidavit for the warrant to search Hampton's residence.

The court denied Hampton's motion to suppress, stating that:

> The Court finds the totality of the situation, finding marijuana, regardless of the amount, the close proximity to where Mr. Hampton was seated, the additional fact that there was twelve hundred forty-one dollars in cash on an unemployed person, the additional fact that he was carrying a weapon constitute reasonable cause to believe that other contraband, other narcotics would be found in the home, the residence of Mr. Hampton. . . .

### Reasonable Cause

On appeal, Hampton contends that the trial court erred in denying his motion to suppress evidence seized pursuant to the warrant to search his residence because there was no nexus between the illegal activity discovered during the traffic stop and the place to be searched. He apparently argues that the affidavit for the search warrant was insufficient because there was no evidence to support reasonable cause to believe that evidence of a crime would likely be found in his home.

In reviewing a trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004).

Rule 13.1(b) of the Arkansas Rules of Criminal Procedure states, in relevant part, as follows:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be

> seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. . . . An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. . . .

As Hampton points out, in *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001), our supreme court stated that the test of probable cause for issuance of a search warrant is whether there is reasonable cause to believe contraband or evidence of the crime would likely be found in the place to be searched.

According to the court in *Yancey*, there is no "substantive distinction" between reasonable cause and probable cause. *Id.* Whether the reasonable or probable cause requirement is met turns on the adequacy of the affidavit or recorded testimony. *Id.* The Arkansas Supreme Court has stated that the test for adequacy of an affidavit, adopted from *Illinois v. Gates*, 462 U.S. 213 (1983), is as follows:

> [T]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of the crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Yancey*, 345 Ark. at 110, 44 S.W.3d at 319 (citations omitted). Thus, an affidavit places facts before the magistrate so that he or she may determine whether they provide a substantial basis for concluding that probable cause exists to issue the search warrant. *Id.* at 111, 44 S.W.3d at 320.

In *Yancey*, the affidavit for a search warrant included statements that the requesting officer had personally observed appellants watering marijuana plants in a remote area located five to six miles from one appellant's residence, that one appellant had previously been convicted for drug-related offenses, and that the appellants had generally been involved in drug-related activity. *Id.* at 111–12, 44 S.W.3d at 320. The supreme court held that these

facts were insufficient to support the inference that the appellants, suspected drug dealers, had evidence in their homes. *Id.* at 113, 44 S.W.3d at 321.

In concluding that the affidavit failed to satisfy our Rule 13.1 and our case law, the court in *Yancey* specifically noted that "The known criminal averment is not only insufficient to support a finding of reasonable cause but is entitled to no weight whatsoever." *Id.* at 112, 44 S.W.3d at 321. Moreover, the court stated as follows:

> For a search warrant to issue, evidence, either direct or circumstantial, must be provided to show contraband or evidence of a crime sought is likely in the place to be searched. Standing alone, circumstantial evidence that the suspect may be a drug dealer is not circumstantial evidence that anything is in his home. At best, the circumstantial evidence here infers that appellants are drug dealers. To then allow an inference that they likely have contraband or evidence of a crime in their homes is to base an inference upon an inference, which is also known as mere suspicion or speculation. ... Reasonable inferences may be drawn from positive or circumstantial evidence, but to allow inferences to be drawn from other inferences, or presumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture.

*Id.* at 115, 44 S.W.3d at 322–23 (citations omitted).

In the case at bar, as in *Yancey*, there is circumstantial evidence to support the inference that Hampton was a drug dealer, but nothing in the affidavit to support the inference that Hampton had evidence in his home. In his affidavit, Officer Spencer stated that he followed a vehicle into town after his canine indicated that drugs might be present in the car. According to the affidavit, Officer Spencer removed Rico Hampton from the rear driver's side of the vehicle and searched him, at which time he found $1241 and a loaded weapon in Hampton's possession. Spencer also stated in his affidavit that he found drugs in the car near where Hampton was sitting and that Hampton admitted to being under the influence of marijuana at the time of his arrest. Furthermore, the affidavit included a statement that, based on the amount of money Hampton had in his possession and his "having no job along with numerous arrest[s] for [drugs] and theft by receiving," Officer Spencer requested a warrant to search Hampton's home.

From these facts, one might reasonably infer that Hampton was a drug dealer; however, we do not find any evidence to support reasonable cause to believe that contraband or evidence of a crime would likely be found in Hampton's home. Thus, we hold that the affidavit failed to provide a substantial basis on which to find probable cause.

### Good-Faith Exception

The State argues that, regardless of our finding that the warrant in this case was unsupported by probable cause, we should nevertheless affirm because Officer Spencer acted in good faith. The "good-faith" exception to the Fourth Amendment exclusionary rule is discussed in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court fashioned a good-faith exception to the requirement of a valid warrant so that suppression of evidence would not be appropriate when a law enforcement officer acted in good-faith reliance on a facially-valid warrant. *See Yancey v. State, supra* (citing *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993)). Suppression is an appropriate remedy, however, if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth. *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

When assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit. *Sims v. State*, 333 Ark. 405, 969 S.W.2d 657 (1998) (citing *U.S. v. Martin*, 833 F.2d 752 (8th Cir. 1987)). The test for determining whether the "good-faith" exception applies is whether it "was objectively reasonable for a 'well-trained police officer' to conclude that [the search] was supported by probable cause." *Loy v. State*, 88 Ark. App. 91, 195 S.W.3d 370 (2004); *Crain v. State*, 78 Ark. App. 153, 79 S.W.3d 406 (2002). This court has recently stated that the objective standard under *Leon* requires officers to have a reasonable knowledge of our rules. *Dodson v. State*, 88 Ark. App. 380, 199 S.W.3d 115 (2004).

Our supreme court in *Yancey* held that the good-faith exception applied where officers executing a warrant to search one appellant's residence believed they were investigating general drug activity, despite the fact that the affidavit for the warrant was "devoid of any direct or circumstantial evidence of marijuana or

any contraband or that evidence of a crime would likely be found in the [residence]." *See Yancey v. State, supra.* The court stated as follows:

> [B]ecause we have a split of authority in that some courts, such as the Ninth Circuit Court of Appeals, justify a search of the dealer's residence when facts infer reasonable cause to believe a person is a drug dealer, we cannot say that a reasonably well-trained police officer was not acting in good faith.

*Id.* at 119–20, 44 S.W.3d at 326.

In this case, Hampton argues that the good-faith exception should not apply because Officer Spencer misled the magistrate by asserting that Hampton had previous convictions for drug offenses when there is nothing in the record to show that he had actually been convicted of such offenses. Specifically, Hampton claims that Officer Spencer recklessly disregarded the truth by failing to check Hampton's criminal record before making the assertion that Hampton had prior convictions for drugs. We need not consider Hampton's arguments on appeal because he failed to raise them below. It is well settled that where an appellant does not advance an argument to the trial court as part of a motion to suppress, we will not consider it for the first time on appeal. *McFerrin v. State,* 344 Ark. 671, 42 S.W.3d 529 (2001). Moreover, the affidavit in this case did not assert that Hampton had any prior *convictions* for drug offenses, but did state that he had previously been *arrested* for such offenses. Because Hampton never challenged the truth of the allegations in the affidavit that he had prior arrests for drug offenses, he has failed to establish that these allegations were misleading to the magistrate who issued the warrant.

In light of our supreme court's holding in *Yancey,* we find that it was objectively reasonable in this case for Officer Spencer to conclude that the search of Hampton's residence was supported by probable cause. Thus, the good-faith exception applies and the trial court's decision to deny Hampton's motion to suppress is affirmed.

Affirmed.

PITTMAN, C.J., CRABTREE, and ROAF, JJ., agree.

GRIFFEN and NEAL, JJ., dissent.

OLLY NEAL, Judge, dissenting. I agree that the affidavit failed to satisfy Rule 13.1 of the Arkansas Rules of Criminal Procedure and that such failure was a substantial violation. However, I differ with the majority and would hold that Deputy Spencer failed to act in "good faith" pursuant to *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the supreme court held that objective good-faith reliance by a police officer on a facially valid search warrant will avoid the application of the exclusionary rule in the event the magistrate's assessment of probable cause is found to be in error. Nonetheless, a police officer may not rely entirely on the magistrate's finding of probable cause. In determining whether the good-faith exception is applicable, this court must decide whether it was objectively reasonable for a *"well-trained police officer"* to conclude that the search was supported by probable cause. A *well-trained police officer* is an officer who has reasonable knowledge of what the law prohibits. *See Leon*, 468 U.S. at 919, n. 20.

In this case, Hampton was riding in the rear of the vehicle, behind the driver. The officer failed to find any drugs in Hampton's possession. However, marijuana was found on the person of Shanneta Simmons, also a passenger in the vehicle, and on the rear passenger side of the vehicle. The amount of marijuana found was less than an ounce and would, thus, lead one to conclude that the marijuana was for personal use. Furthermore, this was not Hampton's vehicle, and the owner of the vehicle did not live in Bradley County. Yet, Hampton was the only person to have his home searched. Deputy Spencer failed to offer facts that would lead a *well-trained police officer* to believe contraband or evidence of a crime would likely be found in Hampton's residence.

Here, the majority has held that the magistrate, who was also the trial judge at the suppression hearing, lacked substantial evidence to support a finding of probable cause. The Supreme Court has said that "the courts must insist that the magistrate purport to 'perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police.' " *Leon*, 468 U.S. at 914 (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)). A magistrate who fails to "'manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." *Id.* at 914.

In *Leon*, the Supreme Court provided that the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant the magistrate issues must be objectively reasonable. I cannot find that Deputy Spencer, as a *well-trained police officer*, could have had an objectively reasonable basis to believe contraband would be found in Hampton's home.

I am authorized to state that Judge Griffen joins in this dissent.